1   Mark Block (SBN 115457)
2   mblock@wargofrench.com
    Jeffrey N. Williams (SBN 274008)
3   jwilliams@wargofrench.com
4   WARGO & FRENCH LLP
    1888 Century Park East, Suite 1520
5   Los Angeles, CA  90067
6   Telephone: 310-853-6300
    Facsimile: 310-853-6333
7
8   Attorneys for Defendants
    TWC Administration LLC and Time Warner NY Cable, LLC
9   *(additional attorneys listed on following page)*

10              **UNITED STATES DISTRICT COURT**
11              **CENTRAL DISTRICT OF CALIFORNIA**

12  GREGORY HILDEBRANDT,              Lead Case No.  EDCV13-02276-JGB
13  individual, on behalf of himself, and on    (DTBx)
    behalf of all persons similarly situated,
14                                    **DEFENDANTS' MEMORANDUM
                 Plaintiffs,          OF POINTS AND AUTHORITIES
15                                    IN SUPPORT OF MOTION FOR
         v.                           SUMMARY JUDGMENT**
16
    TWC ADMINISTRATION LLC, a         Date: March 16, 2015
17  Limited Liability Company; TIME   Time: 9:00 a.m.
    WARNER NY CABLE, LLC; and         Courtroom 1
18  Does 1 through 50, inclusive,     Hon. Jesus G. Bernal
19               Defendants.
20  _____
21  *Consolidated with:*
22  MARK CAMPBELL, individually and
    on behalf of all others similarly situated,
23
                 Plaintiff,
24
         v.
25
    TIME WARNER NY CABLE, LLC, a
26  Delaware Corporation and Does 1-50,
    inclusive,
27
                 Defendants.
28

1

Additional Attorneys for Defendants:

2

J. SCOTT CARR (SBN 136706)

3

scarr@wargofrench.com
JOSEPH W. OZMER II (PRO HAC VICE)

4

jozmer@wargofrench.com

5

NATHAN D. CHAPMAN (PRO HAC VICE)

6

nchapman@wargofrench.com
WARGO & FRENCH LLP

7

999 Peachtree Street, NE, 26th Floor
Atlanta, GA 30309

8

Telephone:  (404) 853-1500

9

Facsimile:  (404) 853-1501

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      SUMMARY OF ARGUMENT ........................................................ 1

II.     PROCEDURAL BACKGROUND ................................................... 3

III.    STATEMENT OF UNDISPUTED FACTS .................................... 4

     A.    Plaintiffs' Job Duties ................................................... 4

     B.    TWC's Voluntary Home Start Program ................................ 4

     C.    Plaintiffs Were Not Required to Spend Additional Time Loading or Unloading Equipment at the Start or End of Their Commutes ........... 6

     D.    Plaintiffs Were Not Permitted to Work After the End of Their Shifts ............................................................... 7

     E.    TWC Made All Required Meal and Rest Breaks Available to Plaintiffs ............................................................ 7

          1.   TWC Scheduled Plaintiffs for Timely Meal Breaks and Directed Them to Take Morning and Afternoon Rest Breaks........ 7

          2.   Plaintiffs Admit They Were Able to Take Their Breaks and Failed to Inform Supervisors If They Did Not Take a Proper Break. ......................................................... 8

          3.   TWC's Policy Was to Pay Premiums If An FST Was Denied the Opportunity to Take a Timely Meal or Rest Break. .............. 8

     F.    Plaintiffs' Uniforms Did Not Require Any Special Care ...................... 9

IV.     DISCUSSION AND CITATION OF AUTHORITY ....................... 9

     A.    Standard For Summary Judgment ......................................... 9

     B.    Plaintiffs Are Not Entitled to Compensation for Commuting Time ....... 10

     C.    Plaintiffs Are Not Entitled to Compensation for Looking Up Their First Job of the Day .......................................................... 11

          1.   Looking Up the Day's First Job Is Preliminary to Plaintiffs' Primary Job Duties and Thus Noncompensable ....................... 12

          2.   Plaintiffs Were Not Subject to TWC's Control When They Chose to Look Up Work Assignments Prior to Clocking In. ....... 13

          3.   Plaintiffs' Alleged Pre-Shift Activities Were De Minimis........... 14

     D.    Plaintiffs' Loading and Unloading Claims Are Meritless...................... 16

     E.    Plaintiffs Were Not Required to Perform Any Post-Shift Work ............ 16

     F.    Plaintiffs' Section 17200 Claim Based on Alleged Meal and Rest Break Violations Fails Because TWC Made Breaks Available to Plaintiffs ........................................................... 17

i

|  |  | 1. | Plaintiffs Must Show That TWC Did Not Make Breaks Available ..................................................................... 17 |
|  |  | 2. | TWC Provided Plaintiffs the Opportunity for Timely Breaks ..... 18 |
|  |  | 3. | TWC Paid the Appropriate Premium for Missed or Late Breaks........................................................................ 19 |
|  | G. | Plaintiffs' Claim for Failure to Maintain Uniforms Fails....................... 19 |
|  | H. | Plaintiffs' Claim for "Waiting Time" Penalties Fails ........................... 20 |
|  | I. | Plaintiffs' Claim for Inaccurate Wage Statements Fails ......................... 21 |
|  |  | 1. | Plaintiffs' Wage Statements Were Accurate ............................... 22 |
|  |  | 2. | Plaintiffs Cannot Show Any Injury From Their Wage Statements ................................................................. 23 |
|  |  | 3. | Plaintiffs Cannot Convert Section 226 Into a Vehicle for Multiple Recovery on Their Overtime Claim............................ 23 |
|  | J. | Plaintiffs' Derivative PAGA Claim Fails ............................................. 24 |
| V. | | CONCLUSION ........................................................................ 25 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcantar v. Hobart Service*,
  No. ED CV 11-1600 PSG, 2012 WL 6539547 (C.D. Cal. Dec. 12, 2012)........11

*Alvarado v. Costco Wholesale Corp.*,
  No. C 06-04015 JSW, 2008 WL 2477393 (N.D. Cal. June 18, 2008)..............15

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .................................9, 10

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680, 66 S. Ct. 1187, 90 L.Ed. 1515 (1946) ........................................14

*Brinker Rest. Corp. v. Sup.Ct.*,
  53 Cal.4th 1004, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012) ...........................18

*Busk v. Integrity Staffing Solutions, Inc.*,
  713 F.3d 525 (9th Cir. 2013)....................................................................15, 16

*Carter v. Panama Canal Co.*,
  314 F. Supp. 386 (D.D.C. 1970), *aff'd*, 463 F.2d 1289 (D.C. Cir.), *cert.
  denied*, 409 U.S. 1012, 93 S. Ct. 441, 34 L. Ed. 2d 306 (1972).......................15

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ......................................9

*Curtin v. United Airlines*,
  275 F.3d 88 (D.C. Cir. 2001) ............................................................................3

*E.I. du Pont De Nemours & Co. v. Harrup*,
  227 F.2d 133 (4th Cir. 1955)............................................................................15

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
  646 F.2d 413 (9th Cir. 1981)............................................................................17

*Green v. Planters Nut & Chocolate Co.*,
  177 F.2d 187 (4th Cir. 1949)............................................................................15

*Harris v. Vector Marketing Corp.*,
  656 F. Supp. 2d 1128 (N.D. Cal. 2009).............................................................21

iii

*Jasper v. C.R. England, Inc.*,
    Case No. 08–cv–5266–GW–CWX, 2012 WL 7051321 (C.D. Cal. Aug. 30, 2012) ................................................................................................25

*Jones v. Spherion Staffing LLC*,
    LA CV11-06462 JAK, 2012 WL 3264081 (C.D. Cal. Aug. 7, 2012) ... 23, 24, 25

*Kempf v. Barrett Business Servs., Inc.*,
    No. C-06-3161 SC, 2007 WL 4167082 (N.D. Cal. Nov. 20, 2007) .................22

*Lindow v. U.S.*,
    738 F.2d 1057 (9th Cir. 1984) ............................................................. 14, 15, 16

*Loud v. Eden Medical Center*,
    12-02936, 2013 WL 4605856 (N.D. Cal. Aug. 28, 2013) ................................23

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) .......................................................................................9

*Mark Campbell, et al. v. Time Warner NY Cable LLC, et al.*,
    5:14-cv-00005-VAP . [DE 22.], Docket .............................................................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ....................................................................................9, 10

*Morillion v. Royal Packing Co.*,
    995 P.2d 139 (Cal. 2000) ........................................................................10, 13

*Nguyen v. Baxter Healthcare Corp.*,
    8:10-CV-01436-CJC, 2011 WL 6018284 (C.D. Cal. Nov. 28, 2011) ...............24

*O'Connor v. Starbucks Corp.*,
    No. C 06-3706 VRW, 2008 WL 2761586 (N.D. Cal. July 14, 2008) ..............20

*Overton v. Walt Disney Co.*,
    136 Cal. App. 4th 263 (2006) ............................................................. 10, 11, 13

*Plaisted v. Dress Barn, Inc.*,
    No. 12-CV-01679, 2013 WL 300913 (C.D. Cal., Jan. 25, 2013) .....................19

*Porch v. Masterfoods, USA, Inc.*,
    685 F. Supp. 2d 1058 (C.D. Cal. 2008) ...........................................................19

iv

*Roberts v. Trimac Transp. Servs., Inc.*,
  No. C12-05302 HRL, 2013 WL 4647223 (N.D. Cal. Aug. 28, 2013)..............19

*Rodriguez v. Old Dominion Freight Line, Inc.*,
  Case No. 13–cv–891–DSF–RZX, 2013 WL 6184432 (C.D. Cal. Nov. 27, 2013) ........................................................................................................25

*Rutti v. Lojack Corp., Inc.*,
  596 F.3d 1046 (9th Cir. 2010)............................................. 12, 13, 16

*Salazar v. Avis Budget Group, Inc.*,
  251 F.R.D. 529 (S.D. Cal. 2008)....................................................18

*Steinhebel v. Los Angeles Times Comm.*,
  126 Cal. App. 4th 696 (2005)........................................................17

*White v. Starbucks Corp.*,
  497 F. Supp. 2d 1080 (N.D. Cal. 2007)...........................................17

*Wren v. RGIS Inventory Specialists*,
  No. C-06-05778 JCS, 2009 WL 2612307 (N.D. Cal. Aug. 24, 2009)..............11

*Wright v. Schock*,
  742 F.2d 541 (9th Cir. 1984)............................................................3

*York v. Starbucks Corp.*,
  08-07919, 2011 WL 4597489 (C.D. Cal. Aug. 5, 2011)...................................23

**Statutes**

Cal. Bus. & Prof. Code §§ 17200....................................................3, 17

Cal. Code Regs., tit. 8 § 13520.........................................................21

Cal. Lab. Code § 203 ...................................................... 2, 20, 21, 22

Cal. Lab. Code § 226 ...................................................... 22, 23, 24, 25

Cal. Lab. Code § 226.7 ....................................................................3

Cal. Lab. Code § 510(b)..................................................................10

Cal. Lab. Code § 2802 ...................................................................20

**Other Authorities**

California Industrial Welfare Commission Wage Order No. 1-2001 .......................7

DLSE Minimum Wage Memo (January 2011)......................................................20

Fed. R. Civ. P. 56................................................................................................3, 9

# I.    <u>SUMMARY OF ARGUMENT</u>

Plaintiffs Hildebrandt and Campbell (collectively, "Plaintiffs") assert a hodgepodge of wage and hour claims against Time Warner NY Cable LLC and TWC Administration LLC (collectively, "TWC"), all of which fail as a matter of law.

Plaintiffs' claim seeking compensation for commuting from and to their homes in a Company van fails because California law is crystal clear that commuting time is not compensable unless Plaintiffs were ***required*** to use the company vehicle for their commute.  Here, there is no dispute that Plaintiffs' voluntarily chose to participate in TWC's Home Start program, and thus voluntarily chose to commute in the TWC van. Plaintiffs could have instead chosen to leave their vans at a TWC facility each night and commute in their own vehicles to the facility to pick up their vans each day, but instead chose Home Start because it benefitted them to do so.  Thus, Plaintiffs' claim for commute time fails as a matter of law.

Plaintiffs' argument that they should be compensated for time spent looking up the location of their first job of the day also fails as a matter of law for three reasons. First, the Ninth Circuit held under nearly identical circumstances that such time is not compensable because it is incidental to the employee's commute, rather than part of his principal work.  Second, Plaintiffs admit that TWC's policy required them to clock in *before* they looked up their first job, but they chose to violate that policy because they found it convenient to do so, and did not inform their supervisors when they did so.  Third, the few minutes it took Plaintiffs to look up their first job is *de minimis*, and thus not compensable.

Likewise, Plaintiffs' own admissions doom their claim for compensation for time spent "loading" and "unloading" their vans, as Plaintiffs testified that the *only* equipment they "loaded" or "unloaded" was their laptops and signal meters, which they simply carried with them when they went to the van in the morning and walked into their home in the evening.  Thus, this activity cannot be the basis for a claim for unpaid time, as it did not require either Plaintiff to expend any additional time.

Plaintiffs' allegation that they were required to fill out reports at home after their shift fares no better, as Campbell admitted he never performed any such work, while Hildebrandt admitted that TWC did not require any such work and that his supervisors were not aware he was doing it.  As a matter of law, TWC cannot be liable for alleged off-the-clock work it never directed and of which it was unaware.

Likewise, Plaintiffs' unfair competition claim (based on alleged meal and rest break violations) fails because undisputed facts show that TWC provided Plaintiffs the opportunity to take proper breaks.  Plaintiffs admit that TWC scheduled timely and appropriate breaks for them, that their supervisors instructed them that they must take their breaks, and that they never actually missed a meal break.  Plaintiffs' argument that they sometimes failed to take their breaks on time fails because: (1) they cannot show they did not have the *opportunity* to take a timely break; (2) they admit they never told their supervisors when they took a late break; and (3) TWC's policy was to pay the appropriate premium when an employee lacked an opportunity to take a proper break.  Indeed, Hildebrandt received 32 such premium payments.

There is also no merit to Plaintiffs' claim that TWC failed to reimburse them for expenses incurred in washing their work uniforms, as both Plaintiffs admit the uniforms required no special care (*e.g.*, dry-cleaning).  The law is clear that an employer has no obligation to reimburse employees for merely washing uniforms.

The above facts also doom Plaintiffs' derivative claim for "waiting time" penalties, as there is no evidence that TWC failed to pay Plaintiffs any wages due at the time of their terminations, much less evidence of the "willful" failure required to sustain a Labor Code Section 203 claim.  Similarly, Plaintiffs' "inaccurate wage statement" claim fails because it is undisputed that Plaintiffs' wage statements accurately reflected the wages they were paid and Plaintiffs suffered no "injury" from TWC's alleged actions.  Finally, the failure of all of Plaintiffs' underlying claims also causes their derivative PAGA claim to fail as a matter of law.  Thus, the Court should grant the instant motion and dismiss Plaintiffs' lawsuit, in full, with prejudice.

## II.  **PROCEDURAL BACKGROUND**

On July 18, 2014, this Court entered an order consolidating two pending actions:  (1) *Gregory Hildebrandt, et al. v. TWC Administration LLC, et al.*, Case No. 5:13-cv-02276 JGB (DTBx); and (2) *Mark Campbell, et al. v. Time Warner NY Cable LLC, et al.*, Case No. 5:14-cv-00005-VAP (DTBx).  [DE 22.][1]  On July 23, 2014, Plaintiffs filed their Consolidated Class Action Complaint ("Consolidated Complaint").  [DE 23.]  Plaintiffs' Consolidated Complaint alleges:  (1) failure to pay minimum and overtime wages related to alleged pre- and post-shift activities (*Id.* ¶19); (2) violation of the unfair competition laws by failing to provide proper meal and rest periods (*Id.* ¶61);[2] (3) failure to timely pay wages due at termination (*Id.* ¶94); (4) inaccurate itemized wage statements (*Id.* ¶85); (5) failure to reimburse Plaintiffs for expenses incurred in maintaining their uniforms (*Id.* ¶99); and (6) a derivative claim under the Private Attorney General Act ("PAGA") based on the same alleged substantive violations.  (*Id.* ¶104.)

On August 12, 2014, TWC filed its Answer, denying each of Plaintiffs' claims.  Plaintiffs filed a Motion for Class Certification on November 20, 2014.  TWC opposes that motion in a separate filing filed this same day.  However, because resolution of the instant Motion in Defendants' favor will negate the need to decide the issue of class certification, the Court should consider the instant Motion first.[3]

---

[1] Docket entry citations ("DE") throughout this brief are to the lead case, 5:13-cv-02276, unless otherwise specified.

[2] Although Plaintiffs assert that TWC's alleged failure to provide proper meal and rest breaks serves as the basis for their Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200 claim (*Id.* ¶ 61), they did not assert a separate cause of action under California Labor Code § 226.7 in the Consolidated Complaint.

[3] *See, e.g., Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984) ("It is reasonable to consider a Rule 56 motion first when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation."); *Curtin v. United Airlines*, 275 F.3d 88, 92 (D.C. Cir. 2001) (summary judgment properly granted before ruling on class certification because "district court readily and correctly perceived fatal flaws in plaintiffs' claims").

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          CV13-2276

### III.   STATEMENT OF UNDISPUTED FACTS[4]

**A.   Plaintiffs' Job Duties**

Plaintiff Hildebrandt was employed by TWC as a Field Service Technician ("FST") from approximately August 1, 2006 until February 22, 2013, when he was terminated for using a TWC fuel card to purchase fuel for his personal use.  (SUF ¶¶1-2.)  Hildebrandt worked out of TWC's Ontario, California facility from approximately early 2008 until his termination.  (SUF ¶3.)  Plaintiff Campbell was employed by TWC as an FST from approximately August 1, 2006.  (SUF ¶4.)  From approximately September 2007 until he went on a leave in approximately July 2009 from which he did not return, Campbell worked out of TWC's Claremont, California facility.  (SUF ¶4.)

As FSTs, Plaintiffs were primarily responsible for installing, troubleshooting, repairing, and disconnecting TWC's services at customer residences, which required Plaintiffs to travel to customer locations to perform their jobs.  (SUF ¶5.)  Plaintiffs were notified of their jobs, including the customer address where the work was to be performed, via a software program called "WorkAssure," which they could access through their Company-issued laptops.  (SUF ¶¶7-8.)  TWC provided Plaintiffs with service vans equipped with tools, parts and other items necessary for them to carry out their job responsibilities.  (SUF ¶9.)   Plaintiffs were compensated on an hourly basis and would use their cell-phones to clock in and out via a program called "Teletime."  (SUF ¶10-11.)  Plaintiffs were frequently paid overtime.  (SUF ¶¶12-13.)

**B.   TWC's Voluntary Home Start Program**

FSTs have the option to participate in TWC's Home Start program, which permits them to drive their TWC vans home at the end of the day instead of returning

---

[4]   Pursuant to this Court's Standing Order, Defendants file their Statement of Undisputed Facts ("SUF") concurrently herewith.

them to their assigned facility, and then to commute from their home directly to their assigned area in the morning.  (SUF ¶14.)  FSTs participating in the Home Start program are typically assigned jobs within a limited general area.  (SUF ¶16.)

The Home Start program is voluntary.  (SUF ¶15.)  Indeed, numerous FSTs elect not to participate in the program, choosing instead to drive their personal vehicle to and from a TWC facility to pick up their TWC van.  (SUF ¶¶17-18.)  In fact, the written policy describing the Home Start program specifically contemplates that some FSTs will choose *not* to participate, as it expressly states that it does not apply to FSTs who do not commute to and from home in their Company vehicles.  (SUF ¶19.)

Both Plaintiffs chose to participate in the Home Start program.  (SUF ¶¶20-21.)  They state that they chose to do so because: (1) it was more convenient for them to drive from their homes to the first work location of the day than to first drive to a TWC facility to pick up their van; and (2) the program provided a financial benefit to Plaintiffs, as they did not have to use their personal vehicles (or gas) for commuting.  (SUF ¶22-23.)  Plaintiffs were not required to participate in the Home Start program, and had the option to leave their TWC vans at their assigned facilities at the end of each day and to commute to and from that facility in their own vehicle.  (SUF ¶24.)

The Home Start policy provides explicit instructions regarding the process that FSTs were to follow to clock in to Teletime and log in to WorkAssure.  (SUF ¶25.)  Specifically, Plaintiffs were to: (1) arrive in the city they were assigned to no later than the beginning of their shift; (2) clock in; and (3) *only after clocking in*, log into WorkAssure and look up their first job.  (SUF ¶¶25-26.)[5]

Despite these clear instructions, Plaintiffs testified that they violated the policy by logging into WorkAssure before they clocked in.  Specifically, Campbell claims he

---

[5] FSTs not participating in Home Start clock in upon arriving at the TWC facility to pick up their van.  (SUF ¶27.)

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    CV13-2276

1   would log into WorkAssure while he was making coffee and getting ready in the

2   morning.   (Campbell Tr. 130:4-14.)   Hildebrandt claims he would normally start

3   driving to his general work area and log into WorkAssure on his laptop while en route.

4   (Hildebrandt Tr. 90:9-91:5; 92:11-93:3.)   Plaintiffs chose to violate TWC's policy

5   because they felt it was more convenient to look up the specific address of their first

6   job site and drive directly there, rather than driving to the general area where they

7   were typically assigned, clocking in, and then logging into WorkAssure as required by

8   the policy.  (SUF ¶28-29.)  Plaintiffs admit that the only reason they looked up their

9   first job prior to clocking in was to determine the precise location of their first job.

10  (SUF ¶28-29.)  Plaintiffs further admit that no supervisor or manager ever told them to

11  perform this task before clocking in, they never informed their supervisors that they

12  were doing so, and they did so simply because it was more convenient or made more

13  "sense" to them to do it their way.   (SUF ¶28-31.)   Plaintiffs did not complain to

14  anyone at TWC about logging into WorkAssure prior to clocking in.  (SUF ¶32-33.)[6]

15  **C.**   **Plaintiffs Were Not Required to Spend Additional Time Loading or
         Unloading Equipment at the Start or End of Their Commutes**

16

17       The only items Plaintiffs were required to remove from their vans and bring

18  into their homes were their laptop computers and signal meters.  (SUF ¶41.)  Plaintiffs

19  admit they simply carried both items with them to the vehicle in the morning and from

20

---

21  [6]  Notably, TWC has express, written policies providing that "[a]ll non-exempt hourly
    employees are responsible for accurately reporting all hours worked," and that
22  "[e]mployees are required to provide complete and accurate information to
    management regarding worked and non-worked hours." (SUF ¶¶45-46.)   Indeed,
23  TWC's policies explicitly forbid non-exempt employees from working during times
    for which they are not being compensated, providing that:  "***Employees are never to
24  clock out and keep working (working off the clock). Working off the clock is strictly
    prohibited***." (SUF ¶47.)  Plaintiffs understood they were required to report all of the
25  time that they worked, that TWC's "company policy" was to pay for all hours worked,
    and that they were not permitted to work off the clock.   (SUF ¶¶48-49.)   In fact,
26  Hildebrandt admits that TWC's policies were designed to ensure he was paid for all of
    the hours worked, including all overtime.  (SUF ¶50.)
27

28

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    CV13-2276

the vehicle at day's end.  (SUF ¶¶42-44.)  Thus, Plaintiffs did not make a special trip for these items or otherwise spend time "loading" or "unloading" their vehicles.

**D.   Plaintiffs Were Not Permitted to Work After Clocking Out**

Plaintiffs' Complaint alleges that after they arrived home from their shifts, they were required to "turn on their computers, log in and complete reports required by [TWC]."  (DE 23 ¶17.)  Plaintiffs' testimony exposes this allegation as false, as Campbell admits that the *only* thing he did after arriving home was carry his signal meter and laptop into his house upon leaving his vehicle.  (SUF ¶52.)  Further, while Hildebrandt claims he performed post-shift activities, he admits he was never told to do so by TWC management and that he never informed his supervisor that he was allegedly performing those activities after clocking out.  (SUF ¶53.)

**E.   TWC Made All Required Meal and Rest Breaks Available to Plaintiffs**

**1.   TWC Scheduled Plaintiffs for Timely Meal Breaks and Directed Them to Take Morning and Afternoon Rest Breaks**

TWC's Employee Handbook provides that:

If you are a nonexempt employee in California, for every four (4) hours or major fraction of four (4) hours that you work, you are entitled to one 10-minute break. Breaks are considered time worked and are not deducted from your time on the clock.

Lunch periods are one hour (unless specified differently by your department) and are not considered time worked. Your supervisor will advise you of your individual schedule for lunch and breaks.

Management may authorize a reduced meal period. However, an employee may not "work through" or waive his/her right to mealtime or break periods; full-time employees must take a rest period of at least ten minutes for each four-hour work period and a duty-free-meal period of a least 30 minutes after the first consecutive four to five hours of work. All nonexempt employees should notify and coordinate with their supervisor to take their breaks and meal periods as required.

(SUF ¶55.)  TWC also informed Plaintiffs about their meal-period rights by posting California Industrial Welfare Commission Wage Order No. 1-2001 in the break rooms at the facilities where Hildebrandt and Campbell worked.  (SUF ¶¶56-59.)

7

Plaintiffs admit that TWC scheduled them to take a one-hour lunch break four (4) hours into their shifts, at 12:00 pm.  (SUF ¶¶62-63.)[7]  Plaintiffs also admit they were provided a full hour for their meal breaks (rather than the 30 minutes required by law), and that they were not expected to arrive at the next job after their meal breaks until ten minutes after clocking back in.  (SUF ¶¶64-68.)

Plaintiffs further admit that TWC instructed them to take two (2) 10 to 15-minute rest breaks each day, one in the morning and one in the afternoon.  (SUF ¶¶69-70.)  Finally, Plaintiffs admit that supervisors emphasized that meal breaks and rest breaks needed to be taken on time.  (SUF ¶¶71-72.)

## 2.  **Plaintiffs Admit They Were Able to Take Their Breaks**

Plaintiffs admit they were able to take their meal breaks.  (SUF ¶¶73-74.)  Plaintiffs complain only that they sometimes took their meal breaks late and that they sometimes did not take their morning or afternoon rest breaks.  (Hildebrandt 173:8-177:1.)  Specifically, Campbell testified he was always provided at least 30 minutes for a lunch break and that he typically took a full hour break.  (SUF ¶73.)  Further, while Campbell claimed he often took his meal break late due to work demands, he *never* once informed his supervisor about it.  (SUF ¶76.)  Similarly, Hildebrandt testified that he would typically take a full hour for his meal break (but in no case less than 30 minutes) and that, during the meal break, he was relieved of all job duties.  (SUF ¶74.)  Hildebrandt, like Campbell, never informed his supervisor when he took an untimely meal or rest break.  (SUF ¶75.)  In fact, Hildebrandt admitted that supervisors were available to help FSTs finish their jobs so they could take meal breaks on time, but he chose not to ask for assistance.  (SUF ¶77.)

## 3.  **TWC's Policy Was to Pay Premiums if an FST Was Denied the Opportunity to Take a Timely Meal or Rest Break**

If an FST does not have the opportunity to take a timely meal or rest break,

---

[7]  Both Plaintiffs worked a shift from 8:00 a.m. to 5:00 p.m.  (SUF ¶¶60-61.)

TWC's policy is to pay the FST an additional one-hour of pay for each such missed or untimely meal or rest break.  (SUF ¶79.)  Indeed, TWC paid Hildebrandt **32 hours** of premium payments during his employment.  (SUF ¶80.)

**F.**  **Plaintiffs' Uniforms Did Not Require Any Special Care**

TWC provided Plaintiffs with work uniforms.  (SUF ¶¶81-82.)  These items were not made of any special material and required no special care.  (SUF ¶83.) Indeed, both Plaintiffs testified that they did not treat the uniforms any differently than their other laundry and that they laundered their uniforms at home with their other laundry.  (SUF ¶¶84-87.)

## IV.    DISCUSSION AND CITATION OF AUTHORITY

**A.**  **Standard For Summary Judgment**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Material facts are those necessary for the proof of a claim, as determined by reference to substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Initially, the moving party bears the burden to show the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323.  Once the movant meets that burden, the non-movant cannot avoid summary judgment by resting on mere assertions -- unsupported by record evidence -- that the facts are sufficient to support his claims.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  Instead, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original)).  To establish a "genuine" issue, the non-movant must do more than "simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.  Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury

could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**B.   Plaintiffs Are Not Entitled to Compensation for Commuting Time**

Plaintiffs' claim for commuting time fails as a matter of law, as it is undisputed that they were not required to use their Company vehicle for their commute.  Under California law, commuting time to and from the first and last place at which an employee's presence is required by the employer is not normally compensable, even in cases when the employee commutes in a vehicle owned by the employer.  *See* Cal. Lab. Code § 510(b).  Rather, such time is compensable *only* when the employee is *required* to commute in the company vehicle (and the employer exerts significant control over the employee during the commute).  *Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 265 (2006).

In *Morillion v. Royal Packing Co.* 995 P.2d 139 (Cal. 2000), for example, the California Supreme Court found that the employer was required to pay for time employees spent commuting in company-provided transportation because the employer *required* its employees to use employer-provided transportation to get to and from the worksite.  The *Morillion* Court was careful to note, however, that "*employers do not risk paying employees for their travel time merely by providing them transportation* . . . ." *Id.* (emphasis added).  Subsequently, in *Overton*, the court reiterated that time spent commuting in a company vehicle is compensable *only if* the employer *requires* the employee to use the vehicle for his or her commute.  136 Cal. App. 4th at 265.  *Overton* was a class action where the plaintiff claimed that employees were entitled to compensation for travel time when they commuted to work on a shuttle provided by Disney.  *Id.*  The *Overton* court distinguished *Morillion*, noting that Disney employees were not required to take the shuttle, as they had the option to walk or bicycle to the park entrance, take a train or bus, or be dropped off.  *Id.* at 271.  Thus, the court held that the *Overton* plaintiffs were not entitled to compensation for time spent commuting in a company vehicle because they were free to use alternative

modes of transportation.  *Id.*

Notably, this Court's decision in *Alcantar v. Hobart Service*, No. ED CV 11-1600 PSG, 2012 WL 6539547 (C.D. Cal. Dec. 12, 2012), provides an *on point* illustration of these principles, and confirms that Plaintiffs' commute time is not compensable here.  In *Alcantar*, as here, the plaintiff worked as a service technician and was provided a van so that he could perform service calls at customer locations. *Id.* at *1.  As here, the plaintiff had the option to leave his service van at the office at the end of each day or to drive the van home.  *Id.*  The plaintiff in *Alcantar* was not allowed to use the service van for any personal use, just as Plaintiffs *allege* here.[8]  *Id.* The district court held that the plaintiff was not entitled to compensation under California law when he chose to drive his employer's van instead of his own vehicle to work because he "was not required to subject himself to Defendants' control."  *Id.* at *12 (citing *Overton*, 136 Cal. App. 4th at 265); *see also Wren v. RGIS Inventory Specialists,* No. C-06-05778 JCS, 2009 WL 2612307, at *11 (N.D. Cal. Aug. 24, 2009) ("even extended travel on employer-provided transportation is not compensable under California law so long as employees are not required to use it").

Here, Plaintiffs' claim seeking compensation for time spent commuting in TWC's vans is indistinguishable from that found to be meritless in *Alcantar*.  There is no dispute that Plaintiffs always had the option to leave the TWC vans at a TWC facility at the end of the day and use their personal vehicles (or any other alternative transportation of their choosing) to commute to and from home.  (SUF ¶24.)  As such, Plaintiffs' claim for commuting time compensation fails as a matter of law.

## C.   Plaintiffs Are Not Entitled to Compensation for Looking Up Their First Job

Plaintiffs' claim they are entitled to compensation for time allegedly spent

---

[8]  Although Plaintiffs' Complaint alleges that they could not use the Company van for any non-business purpose, Plaintiffs admitted they were permitted to use and did use the van to conduct personal errands during their commutes.  (SUF ¶¶37-40.)

looking up their first job in WorkAssure while off the clock --*in direct violation of TWC's lawful written policies* -- fails for at least three reasons.  First, as the Ninth Circuit has held, any steps Plaintiffs took to simply look up a customer address so they knew where to commute to were preliminary to their principal job duties and therefore non-compensable.  Second, Plaintiffs were not subject to TWC's control when they chose to violate TWC's policies by logging into WorkAssure prior to clocking in.  Third, the time Plaintiffs spent on these activities was *de minimis*.

### 1.   Looking Up the Day's First Job Is Preliminary to Plaintiffs' Primary Job Duties and Thus Noncompensable

Even assuming that Plaintiffs needed to look up their first job of the day before clocking in (in violation of TWC's express policies), Plaintiffs' claim that they should be paid for that activity fails because it was incidental to Plaintiffs' commute and thus preliminary to their primary job duties and not compensable.

The Ninth Circuit's decision in *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046 (9th Cir. 2010), is controlling on this issue.  In *Rutti*, as here, the plaintiff commuted from his home to customer locations in a company-owned vehicle.  *Id.* at 1049.  The *Rutti* plaintiff sought compensation for time he was required to spend each morning "receiving assignments for the day, mapping his routes to the assignments, and prioritizing the jobs."  *Id.*  The Ninth Circuit flatly rejected the *Rutti* plaintiff's claim that he was entitled to compensation for these activities.  That is, because such activities were related to his commute rather than his principal job activities of installing security devices, the time spent on these activities was not compensable and summary judgment was appropriate.  *Id.* at 1057-58.

*Rutti* compels the conclusion that Plaintiffs' alleged pre-shift activities in the present matter are not compensable.  Indeed, both Plaintiffs admit that the only reason they looked up their first job at home was to find out where they needed to commute to.  (SUF ¶¶28-31.)  Thus, as in *Rutti*, there is no question that this activity was related

to Plaintiffs' commute, rather than their principal job duty of installing TWC's products and services.[9]  Accordingly, just as in *Rutti*, Plaintiffs' pre-work activity of looking up their first job of the day is a preliminary activity for which no compensation is required.[10]

### 2.  <u>Plaintiffs Were Not Subject to TWC's Control When They Chose to Look Up Work Assignments Prior to Clocking In</u>

Plaintiffs' claim also fails because they were not subject to TWC's control when they logged into WorkAssure while off the clock, in violation of TWC's policy. California law looks to employer control to determine whether an activity is compensable.  *Morillion*, 22 Cal.4th at 578–85 (citing IWC Wage Order No. 14-80 (defining "hours worked" as time "during which employee is subject to the control of an employer")); *Overton*, 136 Cal. App. 4th at 271 (employees who voluntarily place themselves under employer's purported control during time period when otherwise free to do as they wish not entitled to compensation).  Plaintiffs' testimony forecloses any finding that they were subject to TWC's control during the time they *chose* to log into WorkAssure before clocking in.  Indeed, it is undisputed that when Plaintiffs logged into WorkAssure prior to clocking in they were *violating* TWC's Home Start policy, which specifically required them to drive to the general area where they were assigned to work, clock in, and only then log into WorkAssure to look up their first

---

[9]  In fact, Plaintiffs in the instant case allege far less than the *Rutti* plaintiff, merely claiming they look up the address of their first job, not that they receive all assignments for the day, map routes to all of those assignments or prioritize those jobs.  Further, Plaintiffs here were paid from the time that they arrived in their general work area, while the *Rutti* plaintiff was not paid until he reached his first job site.

[10]  As explained in Section 2, *infra*, Plaintiffs would have been compensated for the time spent looking up their first job had they simply followed TWC's Home Start policy requiring them to drive to their assigned area, clock in, and *then* log into WorkAssure.  Further, Plaintiffs also could have avoided this preliminary task by choosing not to participate in the Home Start program.  That is, FSTs who elect not to participate in Home Start drive their own vehicles to a TWC facility where they clock in, pick up their van, and then look up their first job of the day.  (SUF ¶27.)

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT            CV13-2276

job of the day.  (SUF ¶¶25-26.)  Plaintiffs further admit that nobody at TWC ever told them to log into WorkAssure before they clocked in, and that they never informed their supervisors that they were doing so.  (SUF ¶¶30-31.)  That Plaintiffs were not under TWC's control for this activity is made further evident by Campbell's testimony that he would log into WorkAssure while he was making coffee and getting ready in the morning.  (Campbell Tr. 130:4-14.)  Thus, because there is no evidence that TWC exerted control over Plaintiffs when they chose to log into WorkAssure while off the clock, Plaintiffs' claim for compensation for this time fails as a matter of law.  This is especially so given that Plaintiffs never even informed their supervisors that they were performing this task off the clock.  *See, e.g.*, *Forrester v. Roth's I.G.A. Foodliner, Inc*., 646 F.2d 413, 414 (9th Cir. 1981) ("where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer . . . of the overtime work, the employer's failure to pay for the overtime hours is not a violation"); *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1083-84 (N.D. Cal. 2007) (granting summary judgment where plaintiff admitted he never informed employer of alleged off-the-clock work).

### 3.   Plaintiffs' Alleged Pre-Shift Activities Were *De Minimis*

Even if Plaintiffs' alleged pre-shift activities were otherwise compensable (and they are not, as shown above), Plaintiffs' claim for such compensation would still fail under the *de minimis* doctrine.  That is,

> When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. . . . It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S. Ct. 1187, 1195, 90 L.Ed. 1515 (1946).

To determine whether the alleged work is *de minimis*, the Court should consider (1) the amount of time in question; (2) the practical administrative difficulty of recording the additional time; and (3) the regularity of the additional work.  *Lindow v.*

*U.S.*, 738 F.2d 1057, 1058 (9th Cir. 1984).  As to the first factor, the Ninth Circuit has noted that most courts find daily periods of approximately 10 minutes *de minimis*, even if otherwise compensable.  *See, e.g., Lindow,* 738 F.2d at 1062 (collecting cases); *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 532–33 (9th Cir. 2013) (concluding five minutes daily spent passing through security clearance *de minimis*); *Alvarado v. Costco Wholesale Corp.,* No. C 06-04015 JSW, 2008 WL 2477393, at *3–4 (N.D. Cal. June 18, 2008) (holding "several minutes" plaintiff waited to be let out of building for daily security checks *de minimis); see also E.I. du Pont De Nemours & Co. v. Harrup*, 227 F.2d 133, 135-36 (4th Cir. 1955) (10 minutes); *Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187, 188 (4th Cir. 1949) ("obvious" that 10 minutes is *de minimis*); *Carter v. Panama Canal Co.*, 314 F. Supp. 386, 392 (D.D.C. 1970) (2 to 15 minutes), *aff'd*, 463 F.2d 1289 (D.C. Cir.), *cert. denied*, 409 U.S. 1012, 93 S. Ct. 441, 34 L. Ed. 2d 306 (1972).

Here, the amount of time Plaintiffs allegedly spent logging into WorkAssure and determining the location of their first assignment is similarly *de minimis*.  Indeed, Hildebrandt testified that it took only a "few minutes" to boot up his laptop and that he would log into WorkAssure as he was driving.  (Hildebrandt Tr. 92:11-93:3.)

The second factor, the "practical administrative difficulty" of recording the alleged additional time, also supports a finding that Plaintiffs' alleged pre-shift work was *de minimis*.  While it is possible to determine when an FST first logs in to WorkAssure, the program does not track the amount of time the FST actually expends logging into the program and looking up his or her work assignment, nor could it. (SUF ¶34.)   Plaintiffs' own testimony illustrates the administrative difficulty in tracking such time.  Hildebrandt stated that he normally boots up his computer when he gets into his van, but that he would start driving and would "type or do whatever he needed to do" to login to WorkAssure while driving or while "stopped at a stoplight." (Hildebrandt Tr. 92:15-24.)  Similarly, Campbell testified that he started logging into the computer during his morning routine while making coffee.  (Campbell Tr. 130:4-

15

16.)  Capturing this time is further impracticable because the amount of time can vary wildly based on other factors, including (without limitation) whether the FST shut down or simply locked the computer the night before, the speed of the internet connection and/or the laptop, how proficient an FST is in using a computer, and whether the FST was engaged in other activities while accessing WorkAssure (such as Hildebrandt driving, or Campbell making coffee).  (SUF ¶35.)  Thus, not surprisingly, other FSTs' estimates of the amount of time it takes them to log into WorkAssure and determine their first assignment vary wildly.  (SUF ¶36.)  As such, TWC has no practical way to determine how much time Plaintiffs (or any other FST) actually spent logging into WorkAssure and looking up their work assignments.  Thus, the second factor supports a conclusion that Plaintiffs' alleged pre-shift work was *de minimis*.

Where, as here, the first two factors under *Lindow* are satisfied, courts routinely apply the *de minimis* defense, even when a plaintiff alleges uncompensated time every day.  *See Busk*, 713 F.3d at 532 (holding time employees spent "passing through the security clearance on the way to lunch" *de minimis*, even though done on daily basis); *see also Rutti*, 596 F.3d at 1057-58 (holding alleged pre-shift work *de minimis* even though allegedly performed every morning).  Thus, the time Plaintiffs allegedly spent performing pre-shift activities was *de minimis*, and therefore not compensable.

## D.   Plaintiffs' Loading and Unloading Claims Are Meritless

Plaintiffs admit they spent *no time* loading or unloading their vans.  (SUF ¶¶41-44.)  The only items they would take into their homes were the laptop and signal meter, both of which they simply carried with them when they went to their home at night and to their van in the morning.  (SUF ¶¶42-44.)  Obviously, given that Plaintiffs spent no time loading or unloading their vans, their claims are baseless.

## E.   Plaintiffs Did Not Perform Compensable Post-Shift Work

As noted above, Campbell admits that he did not, in fact, perform any work for TWC after arriving home.  (SUF ¶52.)  While Hildebrandt asserts that he performed some activities after arriving home, such as closing out work orders, he admits that he

16

1    was never instructed to do so and never informed his supervisor that he was

2    performing any such tasks off-the-clock.  (SUF ¶53.)  As the undisputed facts show

3    that TWC was not even aware of this work, TWC cannot be liable for it.  *See, e.g.,*

4    *Forrester*, 646 F.2d 4 at 414 (9th Cir. 1981) ("where an employer has no knowledge

5    that an employee is engaging in overtime work and that employee fails to notify the

6    employer . . . of the overtime work, the employer's failure to pay for the overtime

7    hours is not a violation"); *White,* 497 F. Supp. 2d at 1083-84 (granting summary

8    judgment where plaintiff admitted he never informed employer of alleged off-the-

9    clock work).  Accordingly, Plaintiffs' claim for compensation for alleged post-shift

10   activities fails as a matter of law.

11   **F.   Plaintiffs' Section 17200 Claim Based on Alleged Meal and Rest Break
     Violations Fails Because TWC Made Breaks Available to Plaintiffs[11]**

12

13   **1.   Plaintiffs Must Show That TWC Did Not Make Breaks Available**

14   Plaintiffs' claims for meal and rest break violations fail as a matter of law

15   because undisputed facts demonstrate that TWC provided Plaintiffs with the

16   opportunity to take timely breaks, paid the appropriate premium on all occasions

17   where they were aware that Plaintiffs may not have had an opportunity to take a

18   compliant break, and Plaintiffs never informed TWC of any occasions where they did

19   not have the opportunity to take a proper break.

20   As the California Supreme Court held in *Brinker Rest. Corp. v. Sup.Ct.*, 53

21   Cal.4th 1004, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012):

22

23   [11]  Plaintiffs seek to pursue remedies for alleged meal and rest break violations under
     Business and Professions Code Section 17200, rather than the Labor Code provisions
24   pertinent to such breaks.  Even assuming this is a proper procedure, Plaintiffs' claims
     are governed by the law applicable to meal and rest break claims, and fail as a matter
25   of law, as discussed below.  *See, e.g., Steinhebel v. Los Angeles Times Comm.*, 126
     Cal. App. 4th 696, 712 (2005) ("while an employer's policy or practice that violates
26   the Labor Code may also be held an 'unlawful business practice' under § 17200 *et
     seq.*, where an employer's policy is lawful and permissible, there is no basis for relief
27   under the unfair competition law").

28

An employer's duty with respect to meal breaks under both section 512 [(a)] and Wage Order No. 5 is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30–minute break, and does not impede or discourage them from doing so.... On the other hand, the employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay under Wage Order No. 5[(b)] and Labor Code section 226.7[(b)]."

*Id.* at 1040–41, 139 Cal.Rptr.3d 315, 273 P.3d 513. Pursuant to *Brinker*, Plaintiffs cannot create an issue of fact on their meal and rest break claims simply by showing that they missed some breaks or took them late. Instead, they must show that they did not have the *opportunity* to take compliant breaks. *Id., see also, e.g., Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529, 533-34 (S.D. Cal. 2008) ("plaintiffs must show defendants forced plaintiffs to forego missed meal periods"). As shown below, undisputed facts preclude Plaintiffs from making any such showing.

## 2. <u>TWC Provided Plaintiffs the Opportunity for Timely Breaks</u>

Uncontroverted facts, including Plaintiffs' own admissions, prove that TWC made the required breaks available to Plaintiffs, even if Plaintiffs did not always choose to take them in a timely manner, or at all. Indeed, Plaintiffs admit that:

- For an 8 hour work day, they were scheduled for two rest breaks and one meal break. (SUF ¶¶60-63, 69-70);
- TWC scheduled meal breaks four (4) hours into their shifts. (SUF ¶¶62-63);
- They were always able to take their meal breaks. (SUF ¶¶73-74);
- No supervisor ever told Plaintiffs they could not take a break, instead instructing them that they must take their breaks. (SUF ¶¶71-72);
- They never informed their supervisors of occasions when they were allegedly unable to take a timely meal or rest break (SUF ¶¶75-76.)

These undisputed facts showing that TWC made timely meal and rest breaks

available to Plaintiffs destroy their claims as a matter of law. *See, e.g., Roberts v. Trimac Transp. Servs., Inc.*, No. C12-05302 HRL, 2013 WL 4647223, at *4 (N.D. Cal. Aug. 28, 2013) (granting summary judgment for employer after plaintiff testified that "no one at [the employer] ever (1) told him that he was not allowed to take a meal break; (2) said anything to give him the impression that the company did not want him to take meal breaks; or (3) said anything to give him the impression that [the employer's] actual policy was different than its written policy"); *Plaisted v. Dress Barn, Inc.*, No. 12-CV-01679, 2013 WL 300913 at *4 (C.D. Cal., Jan. 25, 2013) ("given that neither Dress Barn's formal policies nor its management ever pressured Plaisted to work through any of her rest or meal breaks . . . Dress Barn is entitled to judgment as a matter of law"); *Porch v. Masterfoods, USA, Inc.*, 685 F. Supp. 2d 1058, 1073-74 (C.D. Cal. 2008) (granting summary judgment to employer on meal break claim where plaintiff never reported missing meal break to supervisor).

### 3.   TWC Paid the Appropriate Premium for Missed or Late Breaks

Further, it is undisputed that TWC pays the required one-hour premium when employees do not have an opportunity to take a timely break. (SUF ¶79.)  Hildebrandt received such premiums on over 30 occasions.  (SUF ¶80.)  Further, Plaintiffs have not identified a single occasion where they did not have the opportunity to take a timely meal or rest break, reported that situation to a supervisor, and were not paid an hour of premium pay.  Plaintiffs' claim fails for this reason, as well.

### G.   Plaintiffs' Claim for Failure to Maintain Uniforms Fails

In Count V of their Consolidated Complaint, Plaintiffs claim that TWC is liable for allegedly failing to reimburse Plaintiffs for the maintenance of their uniforms in violation of California Labor Code § 2802.  (DE 23 ¶97.)  In *O'Connor v. Starbucks Corp.*, No. C 06-3706 VRW, 2008 WL 2761586 (N.D. Cal. July 14, 2008), however, the district court analyzed the IWC regulations and interpretations applicable to Section 2802 and concluded that an employer owes a duty to maintain uniforms "only if [they] require special laundering or care" such as dry-cleaning. *Id.* at *4-5. *See*

19

*also* DLSE Minimum Wage Memo (January 2011) ("Employees may be asked to maintain employer-furnished uniforms when the uniforms require minimal time for care, *e.g.*, uniforms made of a material requiring only washing and tumble or drip drying.") (available at http://www.dir.ca.gov/dlse/minimumwage.pdf).   Here, Plaintiffs admit that their TWC uniforms did not require any sort of special care, and that they simply washed their uniforms along with their household laundry.   (SUF ¶¶83-87.)  Accordingly, Plaintiffs' Section 2802 claim fails as a matter of law.

## H.   Plaintiffs' Claim for "Waiting Time" Penalties Fails

Plaintiffs assert that they are owed waiting time penalties under Labor Code Section 203 because TWC allegedly failed to pay them all wages due upon their termination.  (DE 23 ¶93.)  As shown above, however, undisputed facts demonstrate that TWC did not owe Plaintiffs any additional compensation, and Plaintiffs' Section 203 claim therefore fails as a matter of law.

Moreover, even if Plaintiffs could establish that TWC failed to pay them wages due at the time of their discharge, Plaintiffs' Section 203 claim would still fail because there is no evidence that TWC **willfully** failed to pay Plaintiffs any wages in a timely manner.  Labor Code Section 203 provides:

> If an employer **willfully** fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203(a) (emphasis added).  Thus, pursuant to the plain language of Section 203, penalties are due only if an employer "willfully" fails to pay wages that were earned and due at the time an employee is discharged.  *See, e.g.*, *Harris v. Vector Marketing Corp.*, 656 F. Supp. 2d 1128, 1146 (N.D. Cal. 2009) (granting summary judgment because, even though plaintiff had shown that wages were due, plaintiff had no evidence of any willful failure to pay wages when due).  In this

context, a failure to pay wages is willful "when an employer intentionally fails to pay wages to an employee when those wages are due."  Cal. Code Regs., tit. 8 § 13520.  Further, "a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203."  *Id.*  A "good faith dispute" means: "an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Id.*

Thus, Plaintiffs cannot recover under Section 203 unless they prove TWC acted "willfully" – *i.e.*, that TWC "intentionally fail[ed] to pay wages to [Plaintiffs] when those wages [were] due."  *Id*.  Further, Plaintiffs also cannot establish willfulness if TWC's non-payment of wages was pursuant to "a defense, based in law or fact which, if successful, would preclude any recovery" on Plaintiffs' part.  *Id*.  This is true regardless of whether TWC ultimately succeeds on those defenses.  *Id*.

Here, there is no evidence that TWC "intentionally fail[ed] to pay wages to" Plaintiffs when they were due.  Thus, even if Plaintiffs could show a genuine issue of fact as to whether they were owed additional wages at the time of their discharge (and they cannot), there is no evidence that this omission was willful, or that it occurred for any reason other than a good faith dispute that any such compensation was due. Indeed, as discussed above, TWC has reasonable, good faith defenses to the payment of all of the wages Plaintiffs claim were earned and due upon their discharge. Therefore, because Plaintiffs cannot establish any disputed issue of fact regarding the element of willfulness, their Section 203 claim fails as a matter of law.  *Kempf v. Barrett Business Servs., Inc.*, No. C-06-3161 SC, 2007 WL 4167082, at *8 (N.D. Cal. Nov. 20, 2007) (summary judgment proper on Section 203 claim as employer "put forth legitimate defenses to [plaintiff's] . . . claim" and thus there was "good faith dispute as to whether [defendant] owed [plaintiff] any unpaid wages").

# I.  <u>Plaintiffs' Claim for Inaccurate Wage Statements Fails</u>

Plaintiffs assert that TWC also failed to provide accurate itemized wage statements in violation of California Labor Code § 226.  (Compl. ¶85.)  Section

21

226(a) requires that "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees … an accurate itemized statement in writing showing … all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a)(9).  An employee is entitled to recover statutory damages from his employer when, "as a result of a knowing and intentional failure by an employer to comply with" Section 226(a), she "suffer[s] injury."  Cal. Lab. Code § 226(e)(1).   An employee suffers injury when: (1) "the employer fails to provide accurate and complete information as required by" Section 226(a); **and** (2) "the employee cannot promptly and easily determine from the wage statement [either] [t]he amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement." Cal. Lab. Code § 226(e)(2). As shown below, Plaintiffs' claim fails as a matter of law because: (1) undisputed facts preclude Plaintiffs from establishing that their wage statements were inaccurate or that they were injured by same; and (2) Plaintiffs improperly seek to use Section 226 as a device to obtain a multiple recovery on their overtime claim, rather than remedy any deficiency in their wage statements.

### 1.   Plaintiffs' Wage Statements Were Accurate

Notably, Plaintiffs do not claim any actual inaccuracies on their wage statements.  Instead, their Section 226 theory is that they *should have been paid* additional monies pursuant to the claims they brought in this lawsuit, and because they were not paid those additional monies, their wage statements (and pay) were inaccurate.  Thus, ironically, Plaintiffs argue that TWC was required to provide them with wage statements that were ***inaccurate***, reflecting amounts that Plaintiffs were ***not*** paid.  As shown below, that theory cannot be countenanced, as it turns the intent of the statute on its head.  In any event, given Plaintiffs' theory, ***it is undisputed that Plaintiffs' wage statements were, in fact, <u>accurate</u>, as they accurately reflected both the rates and amounts Plaintiffs were actually paid***.  (SUF ¶¶88, 90.)   Plaintiffs'

22

Section 226 theory thus fails at the very threshold, as they cannot show that their wage statements were inaccurate. *Jones v. Spherion Staffing LLC*, CV11-06462 JAK, 2012 WL 3264081, at *9 (C.D. Cal. Aug. 7, 2012) (purpose of Section 226 is to provide transparency, not double recovery).

### 2.   Plaintiffs Cannot Show Any Injury From Their Wage Statements

These same facts preclude Plaintiffs from showing that they were injured by their wage statements.  Specifically, there is no evidence that Plaintiffs were unable to easily determine the hours and pay rates at which they were paid.  Indeed, Hildebrandt admitted that he was not harmed in any way by the alleged inaccurate wage statements – as he acknowledged that he could easily determine from his wage statements his wage rates, number of hours worked, and amount he was being paid. (SUF ¶89.)    Thus, because Plaintiffs suffered no cognizable injury, summary judgment is proper. *Loud v. Eden Med. Ctr.*, 12-02936, 2013 WL 4605856 (N.D. Cal. Aug. 28, 2013) (plaintiff failed to show injury under current or prior version of statute despite claiming "she had to perform basic math" and that wage statements were "confusing"); *York v. Starbucks Corp.*, 08-07919, 2011 WL 4597489, *4 (C.D. Cal. Aug. 5, 2011) (plaintiff "not considered to have suffered an injury … simply because she had to perform basic math …, [to] ensure that her overtime rate of pay was correct, and speculate on the possibility that she may have been underpaid").

### 3.   Plaintiffs Cannot Convert Section 226 Into a Vehicle for Multiple Recovery on Their Overtime Claim

Because Plaintiffs must concede that their wage statements accurately reflected how and what they were ***actually*** paid, Plaintiffs' theory is that their wage statements were required to show what they contend TWC ***should have*** paid them for overtime, etc.  Thus, Plaintiffs literally contend that to comply with a statute intended to ensure accuracy and transparency with respect to wage statements, TWC was required to provide ***inaccurate*** wage statements (*i.e.*, wage statements that stated something other

than what Plaintiffs were actually paid).  Plaintiffs' theory is an obvious attempt to pervert the wage statement statute into a vehicle for enhanced recovery on their underlying claims for unpaid overtime.  Plaintiffs' theory fails, as it turns the intent of Section 226 on its head.

Indeed, "*the legislative history shows that the purpose of Section 226 was for transparency, __not for double recovery__*." *Jones*, CV11-06462 JAK, 2012 WL 3264081, at \*9 (emphasis added); *see also Nguyen v. Baxter Healthcare Corp.*, 8:10-CV-01436-CJC, 2011 WL 6018284, at \*8 (C.D. Cal. Nov. 28, 2011).  Here, Plaintiffs impermissibly invoke Section 226 as a scheme for multiple recovery on their underlying unpaid wage claim, *not* to remedy any inaccuracy in their wage statements (there was none).  If accepted, Plaintiffs' argument would automatically convert a small claim for unpaid wages into one worth *hundreds or thousands of times* as much simply by bootstrapping to it an entirely derivative claim for wage statement penalties.  As the *Jones* and *Nguyen* courts observed, there is no support for this result in the legislative history of Section 226.  *Jones,* 2012 WL 3264081 at \*9.  Rather, Section 226 was intended to deter employers from providing employees with threadbare wage statements that do not properly inform them as to how they were being paid.  *Id.* Accordingly, the Court should reject Plaintiffs' attempt to twist Section 226 into a device for obtaining a multiple recovery on their overtime claim.[12]

**J.    Plaintiffs' Derivative PAGA Claim Fails**

Plaintiffs' PAGA claim is derivative of their claims for TWC's alleged failure to pay Plaintiffs all owed compensation, failure to timely pay wages, and failure to provide accurate itemized wage statements.  (DE 23 ¶104.)  As demonstrated above, those underlying claims fail as a matter of law.  Accordingly, Plaintiffs' PAGA claim

---

[12]  Even if the Court were to entertain Plaintiffs' multiple recovery scheme, Plaintiffs' claim would still fail as a matter of law because, as shown above, Plaintiffs' underlying claims for unpaid wages fails.

also fails.  See *Rodriguez v. Old Dominion Freight Line, Inc.*, Case No. 13–cv–891–DSF–RZX, 2013 WL 6184432, at *8 (C.D. Cal. Nov. 27, 2013) ("As those claims have all been dismissed, they cannot serve as the basis of Plaintiffs' PAGA claim"); *Jones*, 2012 WL 3264081 at *10; *Jasper v. C.R. England, Inc.*, Case No. 08–cv–5266–GW–CWX, 2012 WL 7051321, at *9 (C.D. Cal. Aug. 30, 2012).

## V.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment in its entirety and that all of Plaintiffs' claims be dismissed with prejudice.

Dated:  January 26, 2015               WARGO FRENCH LLP

                                       By: /J. Scott Carr_____
                                           J. Scott Carr

                                       Attorneys for Defendants
                                       TWC Administration LLC and
                                       Time Warner NY Cable LLC