Mark Block (SBN 115457)
mblock@wargofrench.com
Jeffrey N. Williams (SBN 274008)
jwilliams@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: 310-853-6300
Facsimile: 310-853-6333

Attorneys for Defendants
TWC Administration LLC and Time Warner NY Cable, LLC
*(additional attorneys listed on following page)*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY HILDEBRANDT, and MATTHEW HAAN, individuals, on behalf of themselves, and on behalf of all persons similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>TWC ADMINISTRATION LLC, a Limited Liability Company; TIME WARNER NY CABLE, LLC; and Does 1 through 50, inclusive,<br><br>    Defendants. | Lead Case No.  EDCV13-02276-JGB (DTBx)<br><br>**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**<br><br>Date:  March 16, 2015<br>Time:  9:00 a.m.<br>Courtroom 1<br><br>Hon. Jesus G. Bernal |
| *Consolidated with:*<br><br>MARK CAMPBELL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>TIME WARNER NY CABLE, LLC, a Delaware Corporation and Does 1-50, inclusive,<br><br>    Defendants. | |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS    CV13-2276

Additional Attorneys for Defendants:

J. SCOTT CARR (SBN 136706)
scarr@wargofrench.com
JOSEPH W. OZMER II (PRO HAC VICE)
jozmer@wargofrench.com
NATHAN D. CHAPMAN (PRO HAC VICE)
nchapman@wargofrench.com
WARGO & FRENCH LLP
999 Peachtree Street, NE, 26th Floor
Atlanta, GA 30309
Telephone: (404) 853-1500
Facsimile: (404) 853-1501

In accordance with this Court's Standing Order, Defendants hereby submit their Statement of Undisputed Facts in support of their Motion for Summary Judgment.

## STATEMENT OF UNDISPUTED FACTS

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 1. | Plaintiff Gregory Hildebrandt ("Hildebrandt") was employed by Time Warner NY Cable LLC and TWC Administration LLC (collectively, "TWC") as a Field Service Technician ("FST") from approximately August 1, 2006 until February 22, 2013. | Deposition of Gregory Hildebrandt ("Hildebrandt Tr.") 34:22-35:1, 37:16-19, 183:14-17. |
| 2. | TWC terminated Hildebrandt's employment for using a TWC fuel card to purchase fuel for his personal use. | Hildebrandt Tr. 183:14-184:17. |
| 3. | Hildebrandt worked out of TWC's facility located in Ontario, California. | Hildebrandt Tr. 37:20-25. |
| 4. | Plaintiff Mark Campbell ("Campbell") was employed as an FST, most recently out of TWC's Claremont, California facility, from approximately February 21, 2007 until he went on leave in approximately July 2009, from which he did not return. | Deposition of Mark Campbell ("Campbell Tr.") 23:3-6, 27:17-19, 27:24-28:5. |
| 5. | During their employment as FSTs, Plaintiffs were primarily responsible for installing, troubleshooting, repairing, and disconnecting TWC's services at customer residences. | Hildebrandt Tr. 38:14-20. |
| 6. | As part of their job duties, Plaintiffs were required to travel to customer locations. | Deposition of James Shaw ("Shaw Tr.") 37:20-38:11; Ex. 21. |

| # | | |
|---|---|---|
| 7. | Plaintiffs were notified of their assignments, including the customer addresses where the work was to be performed, via a software program called "WorkAssure." | Hildebrandt Tr. 90:14-17; |
| 8. | WorkAssure was accessible to Plaintiffs through their Company-issued laptops. | Hildebrandt Tr. 90:14-17; Declaration of Debbie Schoemann ("Schoemann Dec.") ¶ 4. |
| 9. | TWC provided Plaintiffs with service vans equipped with tools, parts and other items necessary for them to carry out their job responsibilities. | Campbell Tr. 116:19-117:8. |
| 10. | TWC compensated Plaintiffs on an hourly basis. | Hildebrandt Tr. 45:8-15; Campbell Tr. 105:16-23. |
| 11. | Plaintiffs would record their hours worked by using their cell-phones to clock in and out via a program called "Teletime." | Hildebrandt Tr. 97:23-98:4; Campbell Tr. 132:17-133:1. |
| 12. | Hildebrandt received overtime payments during his employment with TWC. | Hildebrandt Tr. 56:13-57:3. |
| 13. | Campbell received overtime payments during his employment with TWC. | Campbell Tr. 162:13-20. |

| | | |
|---|---|---|
| 14. | TWC's "Home Start" program permits FSTs to drive their service vans home at the end of the workday instead of returning the vehicles to their assigned facility, and then to commute from their home directly to their assigned area in the morning. | Declaration of James Shaw ("Shaw Dec.") ¶ 4; Hildebrandt Tr. 77:6-9. |
| 15. | Participation in the Home Start program is voluntary. | Shaw Dec. ¶ 4; Hildebrandt Tr. 96:10-22; Hildebrandt Dec. ¶ 3; Campbell Tr. 167:16-19; Campbell Dec. ¶ 3. |
| 16. | FSTs who elected to participate in the Home Start program were typically assigned to jobs within the same general area. | Shaw Tr. 54:3-20. |
| 17. | Some FSTs choose not to participate in the Home Start program. | Deposition of Edgar Molina ("Molina Tr.") 64:1-6; Deposition of Adam Perris ("Perris Tr.") 46:10-13; Deposition of Jody Daley-Lovett ("Daley-Lovett Tr.") 83:7-16; Declaration of Pouray Paydar ("Paydar Dec.") ¶ 3; Declaration of Alan Pimento ("Pimento Dec.") ¶ 3; Declaration of Ronaldo Roque ("Roque Dec.") ¶ 3; Declaration of Carlos Silva ("Silva Dec.") Dec. ¶ 3; Declaration of Adolfo Soria ("Soria |

| | | |
|---|---|---|
| | | Dec.") ¶ 3; Declaration of Franklin Ventura ("Ventura Dec.") ¶ 3; Declaration of Marin Villegas ("Villegas Dec.") ¶ 3. |
| 18. | Some FSTs choose to drive their own personal vehicles to and from their assigned facilities rather than use the Company van for their commute. | Molina Tr. 64:1-6; Perris Tr. 46:10-13; Daley-Lovett Tr. 83:7-16; Paydar Dec. ¶ 3; Pimento Dec. ¶ 3; Roque Dec. ¶ 3; Silva Dec. ¶ 3; Soria Dec. ¶ 3; Ventura Dec. ¶ 3; Villegas Dec. ¶ 3. |
| 19. | TWC's written policy describing the Home Start program contemplates that some FSTs will choose not to participate in the program. | Shaw Dec. ¶ 4, Ex. 2; Hildebrandt Tr. 88:15-25. |
| 20. | Hildebrandt was not required to participate in the Home Start program. | Shaw Dec. ¶ 2; Hildebrandt Tr. 96:10-22; Hildebrandt Dec. ¶ 3. |
| 21. | Campbell was not required to participate in the Home Start program. | Campbell Tr. 167:16-19; Campbell Dec. ¶ 3. |
| 22. | Hildebrandt chose to participate in the Home Start program because it was more convenient and economically advantageous for him to drive from his residence to the first work location of the day than to first | Hildebrandt Tr. 79:10-80:9, 96:10-22. |

| | | |
|---|---|---|
| | drive to a TWC facility. | |
| 23. | Campbell's participation in the Home Start program saved him gas money and wear and tear on his personal vehicle. | Campbell Tr. 110:22-114:18. |
| 24. | If either Plaintiff had not wanted to participate in the Home Start program, they had the option not to do so, and instead leave their service vans at their assigned facilities at the end of each day, and to commute to and from that facility in their own vehicle. | Hildebrandt Tr. 77:6-9, 80:7-9; Shaw Dec. ¶ 4. |
| 25. | The Home Start policy instructs FSTs regarding the process that FSTs are to follow to clock-in and log into WorkAssure. | Shaw Dec. ¶ 4, Exh. 2; Hildebrandt Tr. 88:10-14, 89:8-90:8. |
| 26. | The Home Start policy directs FSTs who participate in the program to clock in before logging into WorkAssure. | Shaw Dec. ¶ 4, Ex. 2; Hildebrandt Tr. 88:10-14, 89:8-90:8. |
| 27. | FSTs who did not participate in the Home Start program would clock in after arriving at the TWC facility where they were assigned. | Hildebrandt Tr. 77:6-9, 86:3-8; Daley-Lovett Tr. 84:7-12. |
| 28. | Hildebrandt chose to violate TWC's policy requiring him to clock-in before logging into WorkAssure because he wanted to | Hildebrandt Tr. 98:23-99:11. |

5
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS   CV13-2276

| | | |
|---|---|---|
| | look up the specific address of his first job site and drive directly there. | |
| 29. | Campbell chose to violate TWC's policy requiring him to clock-in before logging into WorkAssure because he wanted to drive directly to the first customer location from his home rather than drive to his assigned area before clocking in and looking up the first customer address then. | Campbell Tr. 124:7-16. |
| 30. | No supervisor or manager ever directed Hildebrandt to log into WorkAssure before clocking in or to otherwise violate the Home Start policy. | Hildebrandt Tr. 91:11-23; 102:20-23. |
| 31. | No supervisor or manager ever directed Campbell to log into WorkAssure before clocking in or to otherwise violate the Home Start policy. | Campbell Tr. 134:1-4. |
| 32. | Hildebrandt never complained to anyone at TWC about logging into WorkAssure prior to clocking in. | Hildebrandt Tr. 85:7-22. |
| 33. | Campbell never complained to anyone at TWC about logging into WorkAssure prior to clocking in. | Campbell Tr. 159:7-11. |
| 34. | While WorkAssure can track the date and time that an FST logs into the system, there | Schoemann Dec. ¶ 6. |

6
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS    CV13-2276

| | | | |
|---|---|---|---|
| | | is no way to determine if the FST is actively looking at data in the system or how much time was spent looking at data in the system. | |
| | 35. | The amount of time it takes for any particular FST to check his or her jobs in WorkAssure varies based on numerous factors, including: (1) whether the FST shuts down or simply locked the computer the night before; (2) the speed of the internet connection and/or the laptop; (3) how proficient an FST is in using a computer; and (4) whether the FST was engaged in other activities while accessing WorkAssure. | Schoemann Dec. ¶ 5. |
| | 36. | The amount of time FSTs estimate it takes them to log into WorkAssure and determine their first assignment generally ranges from a "few seconds" to 10 minutes. | Hildebrandt Tr. 99:12-100:1 ("few minutes"); Campbell Tr. 124:7-125:5 (10-15 minutes); Molina Tr. 173:25-174:11 (normally 5 minutes); Perris Tr. 64:2-9 (5-10 minutes, "at the most"); Daley-Lovett Tr. 89:13-24 (10 minutes); Declaration of William Cabezas ("Cabezas Dec.") ¶ 5 (2-5 minutes); Declaration of Lawrence Campbell ("L. Campbell Dec.") ¶ 5 (no longer than 5 minutes); Raul Castro ("Castro Dec.") ¶ 4 (less than 5 minutes); Declaration of Robert Comfort ("Comfort Dec.") ¶ 5 (2 minutes); |

7
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS CV13-2276

| | | | |
|---|---|---|---|
| | | | Declaration of Luis Flores ("Flores Dec.") ¶ 5 (less than 3 minutes); Declaration of Martin Gomez ("Gomez Dec.") ¶ 5 (little over minute); Declaration of De'Shone Heisser ("Heisser Dec.") ¶ 5 (5-6 minutes); Declaration of Jan McKinnerney ("McKinnerney Dec.") ¶ 5 (less than 2 minutes); Pimento Dec. ¶ 6 (5 minutes); Declaration of Omar Portillo ("Portillo Dec.") ¶ 6 (1 minute); Declaration of Oscar Sagastume ("Sagastume Dec.") ¶ 7 (few seconds); Declaration of Alejandro Sanchez ("Sanchez Dec.") ¶ 4 (5 minutes); Declaration of Leslie Sims ("Sims Dec.") ¶ 5 (few minutes but no more than 5); Soria Dec. ¶ 4 (no more than 5 minutes); Declaration of Cresencio Torres ("Torres Dec.") ¶ 4 (no more than 5 minutes); Villegas Dec. ¶ 5 (3-5 minutes).) |
| 37. | | Hildebrandt was allowed to use the TWC service van for personal errands during his commute. | Hildebrandt Tr. 82:15-83:2. |

8

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS    CV13-2276

| 38. | Hildebrandt did use the TWC service van for personal errands during his commute. | Hildebrandt Tr. 82:15-83:2. |
|---|---|---|
| 39. | Campbell was allowed to use the TWC service van for personal errands during his commute. | Campbell Tr. 168:25-169:5. |
| 40. | Campbell did use the TWC service van for personal errands during his commute. | Campbell Tr. 168:25-169:5. |
| 41. | The only TWC equipment that Plaintiffs were required to bring into their home in the evening, or carry to their van in the morning, were their laptops and signal meters. | Hildebrandt Tr. 66:16-67:12; Campbell Tr. 119:15-20. |
| 42. | At the end of the day, Plaintiffs carried their laptop with them into their house when they exited the vehicle. | Hildebrandt Tr. 66:16-67:12; Campbell Tr. 118:5-120:24. |
| 43. | Plaintiffs would also carry their signal meters in with them at the end of the day when they exited the vehicle. | Hildebrandt Tr. 66:16-67:12; Campbell Tr. 118:5-120:24. |
| 44. | Plaintiffs were able to carry both the laptop and signal meter in with them in a single trip. | Hildebrandt Tr. 67:4-68:12; Campbell Tr. 118:5-120:24. |
| 45. | TWC has an express, written policy providing that "[a]ll non-exempt hourly employees are responsible for accurately | Shaw Dec. ¶ 2, Ex. 1. |

| | | |
|---|---|---|
| | reporting all hours worked." | |
| 46. | TWC has an express, written policy providing that "[e]mployees are required to provide complete and accurate information to management regarding worked and non-worked hours." | Shaw Dec. ¶ 3, Ex. 1. |
| 47. | TWC has an express, written policy providing that: "***Employees are never to clock out and keep working (working off the clock). Working off the clock is strictly prohibited***." | Shaw Dec. ¶ 11, Ex. 3. |
| 48. | Hildebrandt understood he was required to report all of the time that he worked, that TWC's "company policy" was to pay for all hours worked, and that he was not permitted to work off the clock. | Hildebrandt Tr. 51:5-13. |
| 49. | Campbell understood he was required to report all of the time that he worked, that TWC's "company policy" was to pay for all hours worked, and that he was not permitted to work off the clock. | Campbell Tr. 182:7-13. |
| 50. | Hildebrandt admits that TWC's policies were designed to ensure he was paid for all of the hours worked, including all overtime. | Hildebrandt Tr. 52:17-53:7, 56:13-57:3. |

| | | |
|---|---|---|
| 51. | FSTs were not required, encouraged, or permitted to perform any work activities, (including submitting reports or responding to e-mails or voicemails) after clocking out for the workday. | Shaw Dec. ¶ 11, Ex. 3; Shaw Tr. 56:16-57:1. |
| 52. | Campbell did not perform any work activities after clocking out at the end of his workday. | Campbell Tr. 139:3-15. |
| 53. | Hildebrandt never informed his supervisor that he was performing work activities after clocking out for the workday. | Hildebrandt Tr. 97:7-14. |
| 54. | TWC's employee handbook provides that nonexempt employees in California are entitled to a paid 10-minute break for every four (4) hours or major fraction thereof worked. | Shaw Dec. ¶ 7, Ex. 1. |
| 55. | TWC's employee handbook provides that nonexempt employees are entitled to a duty-free-meal period of at least 30 minutes after the first four to five hours of work. | Shaw Dec. ¶ 7, Ex. 1. |
| 56. | TWC posts California Industrial Welfare Commission Wage Order No. 1-2001 in its employee break rooms and/or lounge areas in its facilities. | Shaw Dec. ¶ 9. |
| 57. | The IWC Wage Order No. 1-2001 poster sets forth the FSTs' meal-period rights – including the right to commence their meal | Shaw Dec. ¶ 9. |

11
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS            CV13-2276

| | | |
|---|---|---|
| | within the first five hours of work. | |
| 58. | The IWC Wage Order No. 1-2001 was posted in the break room in the Ontario facility where Hildebrandt worked. | Shaw Dec. ¶ 9. |
| 59. | The IWC Wage Order No. 1-2001 was posted in the break room in the Claremont facility where Hildebrandt worked | Shaw Dec. ¶ 9. |
| 60. | Generally, Hildebrandt worked an 8:00 am to 5:00 pm shift during his employment with TWC. | Hildebrandt Tr. 97:17-18. |
| 61. | Generally, Campbell worked an 8:00 am to 5:00 pm shift during his employment with TWC. | Campbell Tr. 123:1-5. |
| 62. | TWC scheduled Hildebrandt to take a lunch break four (4) hours into his shift, at 12:00 pm. | Hildebrandt Tr. 118:11-21. |
| 63. | TWC scheduled Campbell to take a lunch break four (4) hours into his shift, at 12:00 pm. | Campbell Tr. 128:8-18, 152:7-14. |
| 64. | TWC's policy provides FSTs with a one-hour lunch break. | Shaw Dec. ¶ 4; Ex. 2; Hildebrandt Tr. 107:1-12; Campbell Tr. 153:6-9. |
| 65. | Hildebrandt was provided a full hour for his meal breaks. | Hildebrandt Tr. 107:1-12. |

| | | |
|---|---|---|
| 66. | Hildebrandt was not expected to arrive at the next job after his meal breaks until ten (10) minutes after clocking back in from lunch. | Hildebrandt Tr. 107:1-12; Shaw Dec. ¶ 4, Ex. 2. |
| 67. | Campbell was provided a full hour for his meal breaks. | Campbell Tr.153:6-9. |
| 68. | Campbell was not expected to arrive at the next job after his meal breaks until ten (10) minutes after clocking back in from lunch. | Shaw Dec. ¶ 4, Ex. 2. |
| 69. | TWC instructed Hildebrandt to take two (2) 10 to 15-minute rest breaks each day, one in the morning and one in the afternoon. | Hildebrandt Tr. 112:18-22. |
| 70. | TWC instructed Campbell to take two (2) 10 to 15-minute rest breaks each day, one in the morning and one in the afternoon. | Campbell Tr. 155:24-156:7. |
| 71. | Hildebrandt's supervisor emphasized to him that meal breaks and rest breaks needed to be taken on time. | Hildebrandt Tr. 115:7-12. |
| 72. | Campbell's supervisor also emphasized to him that meal breaks and rest breaks needed to be taken on time. | Campbell Tr. 157:15-158:1, 161:22-24. |

13
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS                                    CV13-2276

| | | |
|---|---|---|
| 73. | Campbell was always able to take at least 30 minutes for his lunch break and typically took a full hour. | Campbell Tr. 155:21-23. |
| 74. | Hildebrandt was also always able to take at least a 30-minute duty-free lunch break. | Hildebrandt Tr. 107:1-18, 167:24-168:19 |
| 75. | Hildebrandt never informed his supervisor or management that he was unable to take a timely meal or rest break. | Hildebrandt Tr. 114:20-115:2. |
| 76. | Campbell never informed his supervisor or management that he was unable to take a timely meal or rest break. | Campbell Tr. 156:8-12, 159:12-14, 162:3-12. |
| 77. | Supervisors are available to help FSTs finish up their morning jobs so they can take their meal breaks on time. | Hildebrandt Tr. 177:2-21. |
| 78. | Hildebrandt was aware that his supervisor could help him finish his morning jobs on time, but he chose never to ask for assistance. | Hildebrandt Tr. 177:2-21. |
| 79. | In the event an FST does not have the opportunity to take a timely meal break, TWC's policy is to pay a one-hour meal penalty premium to that FST. | Shaw Tr. 86:2-89:1; Declaration of Natisha Carn ("Carn Dec.") ¶ 2. |
| 80. | TWC paid at least 32 meal penalties to Hildebrandt. | Carn Dec. ¶¶ 3-4, Ex. 1. |

| | | |
|---|---|---|
| 81. | TWC provided Hildebrandt with work uniforms free of cost to him. | Hildebrandt Tr. 134:16-20. |
| 82. | TWC provided Campbell with work uniforms free of cost to him. | Campbell Tr. 37:22-38:10. |
| 83. | The uniforms required no special care. | Campbell Tr. 46:8-22 |
| 84. | Hildebrandt did not treat his TWC uniforms differently than his other laundry. | Hildebrandt Tr. 134:21-135:15. |
| 85. | Campbell also did not treat his TWC uniforms differently than his other laundry. | Campbell Tr. 42:22-43:10. |
| 86. | Hildebrandt laundered his uniforms at home. | Hildebrandt Tr. 134:21-135:15 |
| 87. | Campbell laundered his uniforms at home. | Campbell Tr. 42:22-43:10 |
| 88. | Hildebrandt's wage statements accurately reflect the amounts and rates he was actually paid during his employment with TWC. | Hildebrandt Tr. 161:4-7; 162:16-22; Carn Dec. ¶ 5. |
| 89. | Hildebrandt acknowledged that he could easily determine the wage rates, number of | Hildebrandt Tr. 160:11-162:22. |

15
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS CV13-2276

| | | |
|---|---|---|
| | hours worked and amount he was being paid from his wage statements. | |
| 90. | Campbell's wage statements accurately reflect the amounts and rates he was paid during his employment with TWC. | Carn Dec. ¶ 5. |

WARGO & FRENCH LLP

DATED: January 26, 2015    By: /s/ J. Scott Carr
                                J. Scott Carr

                                Attorneys for Defendants