UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 13-02276-JGB (DTBx)** | Date | August 25, 2016 |
|---|---|---|---|

| Title | *Gregory Hildebrandt et al. v. TWC Administration LLC et al.* |
|---|---|

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**     Order: (1) GRANTING Plaintiffs' Motion for Final Approval of Class Action Settlement (Doc. No. 75); and (2) GRANTING Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, and Service Awards (Doc. No. 76) (IN CHAMBERS)

       On July 23, 2014, Plaintiffs Gregory Hildebrandt and Mark Campbell (collectively "Plaintiffs") filed a consolidated class action Complaint against Defendants TWC Administration, LLC and Time Warner NY Cable, LLC (collectively, "Defendants") alleging they had engaged in various wage-and-hour violations under California law.  Before the Court is: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement (Doc. No. 75); and (2) Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, and Service Awards (Doc. No. 76). Defendants do not oppose the motions.  The Court held a hearing on the motions on June 6, 2016.  For the reasons set forth below, the Court GRANTS both motions in their entirety and DISMISSES this action with prejudice.

## I.   BACKGROUND

### A.  Procedural History

       On November 4, 2013, Plaintiff Gregory Hildebrandt, a former Field Service Technician employed by Defendants, filed a putative class action complaint in California Superior Court for the County of Riverside, against Defendants.  (Not. of Removal, Ex. B, Doc. No. 1.)  Defendants removed the action to this Court on December 11, 2013.  (<u>See</u> Not. of Removal.)

On December 31, 2013, Plaintiff Mark Campbell, a former Field Service Technician employed by Defendants, filed a similar putative class action against Defendant Time Warner NY Cable, LLC, in California Superior Court, County of San Bernardino. (Not. of Removal, Ex. B, Doc. No. 1, Campbell v. Time Warner NY Cable, LLC, No. EDCV 14-0005-JGB (DTBx).)

On July 18, 2014, the Court granted the parties' joint stipulation to consolidate the cases, and the cases were consolidated on the docket of Hildebrandt v. TWC Administration LLC, et al., No. EDCV 13-2276-JGB (DTBx). Plaintiffs Hildebrandt and Campbell (collectively, "Plaintiffs") thereafter filed a consolidated complaint. ("Complaint," Doc. No. 23.) Plaintiffs claimed to represent a class defined as "all individuals who are or previously were employed" by Defendants in California "as a non-exempt Field Service Technician paid on an hourly basis . . . at any time during the period beginning July 12, 2008 and ending on the date as determined by the Court." (Id. ¶ 6.)

The Complaint asserted the following claims against Defendants, based on California law: (1) failure to pay wages, including failure to pay minimum wage and overtime wages; (2) failure to provide meal breaks; (3) failure to provide rest breaks; (4) failure to provide itemized wage statements; (5) failure to timely pay wages due at termination; (6) failure to maintain uniforms; (7) a claim for civil penalties under the California Private Attorneys General Act ("PAGA"); and (8) a claim under the California Business and Professions Code for unfair competition. (Id. at 26-40.) Specifically, Plaintiffs alleged that members of the putative class (including themselves): (1) were not properly compensated for time spent commuting from their homes to their first work assignment each day and traveling home after their last assignment each day; (2) performed work off-the-clock for which they were not compensated; (3) were not provided with daily meal or rest breaks (or were not paid break premiums in lieu of meal breaks); (4) were required to wear uniforms that Defendants failed to maintain; (5) did not receive accurate wage statements; and (6) were not paid all wages due upon termination. (Id.)

On November 20, 2014, Plaintiffs filed a motion for class certification. (Doc. No. 35.)

On January 26, 2015, Defendants filed a motion for summary judgment as to all claims asserted by Plaintiffs. ("Motion," Doc. No. 38.) On March 18, 2015, the Court issued an order partially granting Defendants' motion for summary judgment on Plaintiffs' claims for compensation for commuting time, failure to provide rest breaks, and failure to maintain uniforms. (Doc. No. 57.) The Court did not address Plaintiffs' motion for class certification in its order.

On August 4, 2015, while Plaintiffs' motion for class certification was pending before the Court, the parties notified the Court they had reached a class-wide settlement of this action. (Doc. No. 64.)

On October 30, 2015, Plaintiffs filed a motion for preliminary approval of class settlement, presenting a proposed settlement agreement ("Settlement Agreement," Doc. No. 68-2). (Doc. No. 68.) Plaintiffs sought certification of a class of individuals "who are or were employed as Field Service Technicians by Defendants in California during the Class Period" ("Settlement Class"). (Id.)

On January 11, 2016, after conducting a hearing, the Court issued an order granting Plaintiffs' motion for preliminary approval of class settlement. ("Preliminary Approv. Order," Doc. No. 73.) In its Preliminary Approval Order, the Court: (1) conditionally certified the Settlement Class solely for the purpose of settlement; (2) appointed Plaintiffs as Settlement Class Representatives; (3) appointed Norman B. Blumenthal, Kyle R. Nordrehaug, and Aparajit Bhowmik of Blumenthal, Nordrehaug & Bhowmik, and James R. Hawkins and Gregory Mauro of James Hawkins APLC as Class Counsel; (4) authorized the retention of CPT Group, Inc. as the "Settlement Administrator"; and (5) ordered dissemination of notice to the Settlement Class in the manner described in the Settlement Agreement. (Id.)

On March 11, 2016, Plaintiffs filed their Motion for an Award of Attorneys' Fees, Costs, and Service Awards. ("Award Mot." Doc. No. 75, 75-1.) In support, Plaintiffs filed: (1) a declaration by Norman Blumenthal and three exhibits ("Blumenthal Award Decl.," Doc. No. 75-2); (2) a declaration by James Hawkins and three exhibits ("Hawkins Award Decl.," Doc. No. 75-3); and (3) a declaration by Gregory Mauro (Doc. No. 75-4).

On May 9, 2016, Plaintiffs filed their Motion for Final Approval of Class Action Settlement, seeking: (1) final approval of the Settlement Agreement; (2) final certification of the Settlement Class; and (3) entry of final judgment and dismissal of this action with prejudice. ("Final Approv. Mot.," Doc. No. 76, 76-1.) In support, Plaintiffs filed: (1) a declaration by Norman Blumenthal and two exhibits ("Blumenthal Approv. Decl.," Doc. No. 76-2); (2) a declaration by James Hawkins ("Hawkins Approv. Decl.," Doc. No. 76-3); and (3) a declaration by CPT Group, Inc. Case Manager Taylor Mitzner and three exhibits (Doc. No. 76-4).

On May 17, 2016, Plaintiffs filed a declaration by Gregory Hildebrandt in support of both Motions. (Doc. No. 78.)

On May 18, 2016, Defendants filed a notice of non-opposition to Plaintiffs' Motions. (Doc. No. 79.)

On June 6, 2016, the Court held a final approval hearing.

**B. The Settlement Agreement**

On October 30, 2015, the parties executed a Joint Stipulation of Settlement and Release as to this action. The Settlement Agreement defined "Class Members," for purposes of this action, as "all individuals who are or were employed as Field Service Technicians by Defendants in California during the Class Period." (Id. ¶ 3.) The "Class Period" in turn was defined as the "period of time from July 12, 2008 through the earlier of (a) the preliminary approval of this settlement or (b) October 27, 2015." (Id. ¶ 4.) The Settlement Class is composed of about 2,900 Class Members worked for Defendants for a total of 525,559 "workweeks"[1] from the beginning of the Class Period till June 6, 2015.[2] (Settlement Agreement ¶ 45.)

---

[1] The Settlement Agreement defined "workweeks" as "the number of weeks in which the Class Member performed work for Defendants as a Field Service Technician in the State of (continued . . . )

The Settlement Agreement's terms are as follows.

**1. Financial Terms**

The parties agreed Defendants would pay a maximum "Settlement Amount" of $3,500,000 inclusive of all payments to Class Members, payments to Class Counsel for fees and expenses, incentive awards to Plaintiffs as class representatives, settlement administration fees, and payments to the California Labor and Workforce Development Agency ("LWDA"). (Id. ¶ 11.) The Settlement Amount would not include Defendants' share of applicable payroll taxes for wage payments made to Class Members under the Settlement Agreement: Defendants agreed to bear these costs separately. (Id.) The Settlement Agreement provided that under no circumstances would the amounts to be paid by Defendants exceed the Settlement Amount plus Defendants' share of applicable payroll taxes. (Id. ¶ 46.a.)

The Settlement Amount was comprised of the following categories of payments.

**a. Payments to Class Counsel**

Defendants agreed not to oppose Plaintiffs' application to the Court for an award of Class Counsel fees and expenses consisting of: (1) up to 33.3% of the Settlement Amount for attorneys' fees (up to $1,155,000); and (2) up to $90,000 for reimbursement of Class Counsels' costs incurred in this litigation. (Id. ¶ 46.b.) Class Counsels' fees would be allocated between Class Counsel as follows: 70% to Blumenthal, Nordrehaug & Bhowmik and 30% to James Hawkins APLC. (Id.)

**b. LWDA Payment**

Defendants agreed to pay the sum of $25,000 to the LWDA, as the LWDA's share of the Settlement Amount attributable to civil penalties under the PAGA. (Id. ¶ 46.c.)

**c. Class Representative Payments**

Defendants agreed not to oppose Plaintiffs' request for incentive awards to Plaintiffs, as class representatives, of $7,500 each. (Id. ¶ 46.d.)

---

( . . . continued)
California during the Class Period." (Settlement Agreement ¶ 19.) The Settlement Agreement counted partial weeks worked as full workweeks, but only included weeks for which each Class member actually received pay for work performed. (Id.)

[2] The parties agreed that if this estimate of the number of workweeks worked by the Class Members was erroneous and the actual amount was 10% greater than the estimate, the total amount of the settlement would increase by 10%. (Settlement Agreement ¶ 45.) If the increase was 20% or greater, either party would have the option to void the settlement within five business days of the discovery of such increase. (Id.)

        **d.  Settlement Administrator Fees**

Defendants estimated they would pay $35,000 in settlement administration fees.  (Id. ¶ 46.e.)

        **e.  Payments to Class Members**

Defendants agreed to pay a "Final Gross Aggregate Settlement Amount" to Class Members, composed of (1) a "Terminated Class Member Payment"; and (2) a "Weekly Benefit Amount."  (Id. ¶ 46.f.i-iii.)  The Terminated Class Member Payment would consist of $100 to each Class Member whose employment was terminated (voluntarily or involuntarily) during the Class Period, for waiting time penalties due under California Labor Code section 203.  (Id.)  The total of all Terminated Class Member Payments would not exceed $79,600.  (Id.)  The Weekly Benefit Amount would consist of $4.06 paid to each Class Member for each workweek the Class Member worked for Defendants during the Class Period.[3]  (Id.)

From the Final Gross Aggregate Settlement Amount due to each Class Member, Defendants would deduct the Class Member's share of mandatory federal, state, and local payroll taxes and withholdings for wage payments made to the Class Member.  (Id. ¶ 46.f.iv.)  The remaining sum would be paid to each Class Member who did not elect to be excluded from the Settlement Agreement: this sum would be titled the "Net Settlement Award."  (Id.)  The total of the Net Settlement Awards paid to the Class Members would be titled the "Net Aggregate Settlement Amount."  (Id.)  The Net Aggregate Settlement Amount was estimated to be $2,180,000.  (Blumenthal Approv. Decl. ¶ 3(c).)

    **2.  Release of Liability**

Pursuant to the Agreement, all Class Members (except those who excluded themselves from the Settlement Agreement by submitting the appropriate form) agreed to the release of their claims as follows:

> Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, the Settling Class and each Settling Class Member . . . fully release and discharge Defendants and their past, present and future members, directors, officers, employees, agents, servants, registered representatives, administrators, predecessors, successors, fiduciaries, trustees, assigns, attorneys, and agents (collectively hereinafter the "Releasees") from any and all claims, causes of action, damages, liabilities, debts, penalties, obligations, and demands, including,

---

[3] The Weekly Benefit Amount would exclude workweeks covered by a separate settlement against Defendants in another action titled, Gillespie v. Time Warner, No. CV 12-01214.  (Settlement Agreement ¶ 46f.ii.)

> but not limited to, any and all claims for attorneys' fees, costs, interest, and statutory and civil penalties that were, or which could have been, asserted in the Litigation arising from or related to Defendants' alleged failure to (a) pay Field Service Technicians wages, minimum wage, or overtime compensation; (b) properly calculate Field Service Technicians' "regular rate" for purposes of computing overtime compensation; (c) provide Field Service Technicians with accurate, itemized wage statements; (d) provide Field Service Technicians with legally required meal and rest breaks (or missed break premiums in lieu of same); (e) pay wages due to Field Service Technicians at the time of termination of employment; or (f) any other claims arising under the Fair Labor Standards Act, the California Labor Code, applicable California Industrial Welfare Commission Wage Orders, the California Business and Professions Code, or the Private Attorney General Act that were, or could have been based on the facts alleged in the Litigation, asserted in the Litigation, or which arose during the Class Period ("Released Class Claims"). Expressly excluded from Released Class Claims are all other claims that were not alleged in the Litigation or could not have been asserted by the Plaintiffs on behalf of the Class in the Litigation, including, but not limited to, claims outside the Class Period, unemployment, workers' compensation, discrimination and retaliation.

(Settlement Agreement ¶ 59.)

The Settlement Agreement further provided that each Class Member waived all rights and benefits afforded by California Civil Code section 1542, which provided that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." (See id. ¶ 60.) In other words, the Settlement Agreement provided that Class Members agreed to release claims "that each Class Representative and Class Member does not know or suspect to exist in his or her favor at the time the Court enters an order granting final approval of this Agreement." (Id.)

### C. Notice and Claims Process

The Settlement Agreement proposed that CPT Group, Inc., a third party class action settlement administrator, act as an independent "Settlement Administrator." (Id. ¶ 16.) Any disputes concerning administration of the settlement would be resolved by the Settlement Administrator. (Id. ¶ 48.)

The Settlement Agreement proposed the following procedure to notify Class Members of the Settlement Agreement and administer the Class Members' claims. The parties requested that the Court first grant preliminary approval of the Settlement Agreement and certify the putative class for purposes of the settlement. (Id. ¶ 49, 63.) Within seven days of the Court entering an

order granting preliminary approval, Defendants agreed to provide to the Settlement Administrator a database of all Class Members and their contact information (a "Class List"). (Id.) Within seven days of receipt of such information, the Settlement Administrator would update the Class Members' mailing addresses using the National Change of Address database (NCOA) and mail a Notice of Pendency of Class Action, Proposed Settlement and Hearing Date for Court Approval ("Notice of Pendency of Class Action and Proposed Settlement" or "Class Notice") to each Class Member. (Id. ¶ 50, Ex. A.) The Settlement Administrator would take appropriate steps to ensure that the Notice of Pendency of Class Action and Proposed Settlement was sent to all Class Members. (Id. ¶ 51.) It would be conclusively presumed that if an envelope was not returned within thirty days of the mailing, the Class Member received the Notice of Pendency of Class Action and Proposed Settlement. (Id.)

The Notice of Pendency of Class Action and Proposed Settlement informed Class Members of the claims raised in this action and the nature of the Settlement Agreement. (Id., Ex. A.) It also instructed them that they could: (1) submit a request for exclusion from the Settlement Agreement and retain their rights to bring their own claims ("Request for Exclusion"); (2) object to the Settlement Agreement by writing to the Court; (3) attend a hearing on the fairness of the Settlement Agreement; or (4) do nothing. (Id. ¶ 52, Ex. A at 2.) The Notice of Class Action and Proposed Settlement informed Class Members of the deadlines for taking any of these actions as well as the date of any hearing scheduled by the Court on the fairness of the Settlement Agreement. (Id., Ex. A at 2.)

Under the Settlement Agreement, the Request for Exclusion had to be postmarked and sent to the Settlement Administrator within sixty days from its initial mailing by the Settlement Administrator, according to directions in the Notice of Pendency of Class Action and Proposed Settlement. (Id. ¶ 52.) The Settlement Administrator had to certify to Class Counsel and Defendants' counsel the names of each Class Member who submitted a timely Request for Exclusion within seven days after the deadline to submit Requests for Exclusion. (Id. ¶ 53.)

Likewise, to be effective, any objections to approval of the Settlement Agreement had to be filed with the Clerk of the Court and properly served upon Plaintiffs' and Defendants' counsel within sixty days from the initial mailing of the Notice of Pendency of Class Action and Proposed Settlement. (Id. ¶ 56.) Class Counsel and Defendants' Counsel would thereafter be entitled to file and serve a response to any such objection no later than five days before the hearing on final approval of the settlement. (Id.) If the Court rejected a Class Member's objection, the objecting Class Member would still be bound by the terms of the Settlement Agreement. Members who submitted a Request for Exclusion would not have standing to object to the Settlement Agreement. (Id.)

Defendants agreed that within seven days of the "Effective Date," they would pay the Settlement Amount to the Settlement Administrator, less any amounts that would have been due to "Unlocated Class Members."[4] (Id. ¶¶ 7, 46a.) The "Effective Date" was defined as the date

---

[4] An "Unlocated Class Member" was defined as a Class Member whose Notice of Pendency of Class Action and Proposed Settlement was returned and continued to be returned (continued . . . )

when: (1) all Parties, Class Counsel and Defendants' counsel have executed the Settlement Agreement; (2) the Court has finally approved the Settlement Agreement and entered Judgment thereon; (3) the Court issues an order dismissing the litigation with prejudice; and (4) the Judgment has become "final."[5] (Id. ¶ 7.) Within seven days of the Effective Date, the Settlement Administrator would disburse Defendants' funds according to the terms of the Settlement Agreement. (Id. ¶ 46a.-f.)

### D. Performance of Settlement Agreement

CPT Group, Inc. has provided members of the Settlement Class with notice pursuant to the claims process set forth in the Settlement Agreement. On January 19, 2016, Defendants provided CPT Group, Inc. with the Class List. (Mitzner Decl. ¶ 5.) On January 22, 2016, CPT Group, Inc. updated Class Members' mailing addresses using the NCOA database. (Id. ¶ 6.) On January 26, 2016, CPT Group, Inc. mailed the Notice of Pendency of Class Action and Proposed Settlement to 3,035 Class members. (Id. ¶ 7.) As of April 28, 2016, 43 of these notices have been deemed undelivered or "unlocated" and CPT Group, Inc. has not found another address to send them to. (Id. ¶ 10.) The 43 Class Members to whom the notices were sent have been deemed "Unlocated Class Members" and are excluded from the Settlement Agreement. (Id.) CPT, Group, Inc. has also received three valid and timely requests for exclusion and has received no objections. (Id. ¶¶ 11, 14.)

Hence, as of April 28, 2016, 2,989 of the individuals on the Class List are participating Class Members and the average estimated individual settlement payment per Class Member is $722.57. (Id. ¶ 15.) The highest estimated settlement payment to any individual Class Member is $1,528.11 and the lowest estimated payment is $3.79. (Id.) The amounts due to the three Class Members who submitted requests for exclusion total $1,535.97 and shall be redistributed among the participating Class Members. (Id. ¶ 11.) The amounts due to the 43 Unlocated Class Members total $23,226.81 and are to be retained by Defendants. (Id. ¶ 10.)

---

( . . . continued)
after the Settlement Administrator had taken all reasonable steps to locate the Class Member. (Settlement Agreement ¶ 12.)

[5] In turn, the Judgment became "final" when either (i) the applicable date for seeking appellate review of the Court's final approval of the Settlement Agreement passed without a timely appeal or request for review having been made or (ii) if an appeal, review or writ was sought from the final judgment, the day after the judgment was affirmed or the appeal, review or writ was dismissed or denied, and the judgment was no longer subject to further judicial review. (Settlement Agreement ¶ 8.)

## II. LEGAL STANDARD[6]

### A. Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. See id. "The settlement must stand or fall in its entirety." Id.

In order to approve the class action settlement herein, the Court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act. Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3). Id.

### B. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2). While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[ ] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Commc'ns, Inc. v. AT&T, 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. See Alba Conte and Herbert B. Newberg, Newberg on Class Actions, § 14.1 (4th ed. 2005) ("Two significant exceptions [to the "American Rule"] are statutory fee-shifting provisions and the equitable common-fund doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

---

[6] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

### III. DISCUSSION

**A. Class Action Fairness Act ("CAFA")**

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such a notice. Id. A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

On August 19, 2016, the parties filed a Joint Status Report representing they have provided notice to state and federal officials pursuant to 28 U.S.C. § 1715(b) and ninety days have passed since such notice was provided. (Doc. No. 81.) CAFA's notice requirement has therefore been satisfied here.

**B. Rule 23 Requirements**

**1. Rule 23(a) and (b)**

In its Preliminary Approval Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). (Prelim. App. Order at 8-11). Accordingly, the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, No. C–08–5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, Nos. CV 04–2147–PHX–JAT, CV 04–2204–PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). Here, the Settlement Class has not changed since it was conditionally certified. All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

### 2. Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its Preliminary Approval Order, the Court approved the notice sent to potential Settlement Class members. (Prelim. App. Order at 13-14.) Notice of the settlement was timely mailed by CPT Group, Inc. (Mitzner Decl. ¶ 7.) The Court therefore finds that notice to the Settlement Class was adequate.

### C. Fair, Reasonable, and Adequate Under Rule 23(e)

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing on June 6, 2016.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

> (1) the strength of the plaintiff's case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the risk of maintaining class action status throughout the trial;
> (4) the amount offered in settlement;
> (5) the extent of discovery completed, and the stage of the proceedings;
> (6) the experience and views of counsel;
> (7) the presence of a governmental participant; and
> (8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exclusive and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. Strength of the Plaintiffs' Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009). In determining the probability of Plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965.

Here, Defendants continue to deny liability and also contend this action is not appropriate for class treatment. (Settlement Agreement ¶ 34.) Specifically, Defendants contend they properly paid Class Members for all hours worked and that they paid Class Members all other wages due at the termination of their employment. (Id.) Defendants also claim they provided Class Members with legally required meal breaks, rest breaks, and accurate itemized wage statements. (Id.)

Given the challenges that could potentially be faced in continued litigation over such issues, the Court finds this factor weighs in favor of approval. See Barbosa v. Cargill Meat Solutions Corp., 1:11-CV-00275-SKO, 2013 WL 3340939, at *12 (E.D. Cal. July 2, 2013) ("Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount.").

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

Settlement occurred before the Court resolved the class certification question. At the very least, trial would have been necessary for the Settlement Class to obtain a remedy and may have resulted in judgment adverse to the Settlement Class. An appeal would have prolonged the litigation even further. Therefore, the settlement avoided further protracted and expensive litigation.

Accordingly, the Court finds that this factor weights in favor of settlement approval.

### 3. Risk of Maintaining Class Action Status Throughout the Trial

Plaintiffs contend their claims in this matter are appropriate for class certification. Before the parties executed the Settlement Agreement, Defendants opposed Plaintiffs' motion for class certification, denying Plaintiffs' meal period allegations and arguing individual issues precluded class certification. (See Doc. No. 37.) Given Defendants' arguments against certification in the absence of the Settlement Agreement, the Court perceives the risk of maintaining class action status throughout the trial and concludes this factor favors final approval.

### 4. Amount Offered in Settlement

The Settlement Agreement represents a substantial recovery for members of the Settlement Class. According to Plaintiffs, Plaintiffs retained an expert who calculated that if Plaintiffs prevailed on their class-wide claims, the maximum damages available to Class Members was approximately $14 million. (Final Approv. Mot. at 8-9; Blumenthal Approv. Decl. ¶ 8(d).) The Settlement Agreement's offer of $3.5 million thus affords Plaintiffs and Class

Members twenty-five percent of their maximum potential recovery, according to this estimate. This represents a substantial recovery for the Settlement Class.

In sum, this factor weighs toward final approval.

### 5. Extent of Discovery Completed and Stage of the Proceedings

This factor requires that the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239.

The settlement is the result of a discovery phase conducted by experienced counsel, involving several depositions, over seven sets of interrogatories, and exchanges of hundreds of pages of documents relating to Defendants' employment practices and records and information about the members of the Settlement Class. (Blumenthal Approv. Decl. ¶ 6(f).) In addition, the parties have extensively litigated the issues raised in this matter, filing briefs regarding motions for summary judgment, class certification, and to compel production of documents.

Based on these facts, the Court finds discovery was sufficiently advanced to allow the parties to make an informed decision about settlement. See DIRECTV, Inc., 221 F.R.D. at 527 ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.") (quoting 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.)). Accordingly, this factor favors settlement.

### 6. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel has significant experience litigating and settling class actions. (Blumenthal Approv. Decl., Ex. 1; Hawkins Approv. Decl. ¶ 18; Mauro Decl. ¶ 6.) The Court accords weight to Class Counsel's recommendation that the Court approve the Settlement Agreement, since Class Counsel is familiar with this litigation and its likelihood of success during litigation and trial. Class Counsel understood the complex risks and benefits of settlement and concluded that the settlement constituted a reasonable recovery that confers a substantial benefit on Settlement Class members. (Final Approv. Mot. at 14-15.)

Moreover, settlements are afforded a presumption of fairness if the negotiations occurred at arm's length. 4 Newberg on Class Actions § 11.41 (4th ed. 2013). Here, the parties submit that the Settlement Agreement is the result of vigorously contested, arm's length negotiations.

(Final Approv. Mot. at 15-16); see Rodriguez, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . .").

Therefore, this factor weighs in favor of approval.

### 7. Presence of a Governmental Participant

No governmental entity is present in this litigation. Therefore this factor favors approval.

### 8. Any Opposition by Class Members

The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

Here, CPT Group, Inc. has received no objections to the Settlement Agreement and only three timely requests for exclusion. (Mitzner Decl. ¶¶ 11, 14.) Given the small number of opt-outs and the absence of objections, the Court finds that this factor weighs in favor of final approval.

After considering all of the relevant factors, the Court concludes that all eight factors favor approval. After reviewing all of the evidence presented and the motion papers, the Court finds that the Settlement Agreement is "fair, reasonable and adequate to all concerned parties." Ficalora v. Lockheed Cal. Co., 751 F.2d 995, 996 (9th Cir. 1985). Therefore, the Court APPROVES the Settlement Agreement.

## D. Attorneys' Fees and Costs

### 1. Attorneys' Fees

Class Counsel also requests approval of its fees. Courts are obliged to ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). Under the percentage-of-the-fund method, an award of twenty-five percent of the gross settlement amount is the "benchmark" for attorneys' fees calculations. Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000).

The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those

prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the Court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).[7]

Here, Class Counsel requests 33.3% of the Settlement Amount (i.e. $1,115,000) in attorneys' fees, pursuant to the Settlement Agreement. Class Counsel contends this fee is reasonable under both the lodestar method and the percentage-of-the-fund method. (Award Mot. at 5-18.) Class Counsel estimates that it has expended more than $772,451.25 in attorney time litigating this matter. (Award Mot. at 17.) Blumenthal, Nordrehaug & Bhowmik expended $454,081.25 in attorney and staff hours and James Hawkins APLC expended $318,370. (Blumenthal Award Decl. ¶ 8, Ex. 3; Hawkins Award Decl. ¶ 25, Ex. B.)

The amount of fees requested (i.e. 33% of the Settlement Amount) is roughly proximate to the 25% "benchmark" under the percentage-of-the-fund method. See Powers, 229 F.3d at 1256-57; see also Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (noting 20-30% is the "usual range" for attorneys' fees under the percentage-of-the-fund method); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing to five recent wage-and-hour cases where courts approved fee awards ranging from 30% to 33% and approving percentage-of-the-fund award of 33% to class counsel). Moreover, while the $1,115,000 in requested fees represents approximately 150% of Class Counsel's estimated lodestar of $772,451.25, the Court is persuaded Class Counsels' requested fee is reasonable given the prolonged length of the litigation and the favorable terms of the Settlement Agreement. See Kerr, 526 F.2d at 70 (noting time and labor required for and results obtained from litigation are factors to consider when awarding attorneys' fees). Hence, the overall requested amount of attorneys' fees appears reasonable.

Accordingly, the Court APPROVES the suggested award of attorneys' fees.

**2. Costs**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc.

---

[7] In Kerr, the Ninth Circuit adopted the 12–factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974); this analysis identified the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." Rutti v. Lojack Corp., Inc., No. SACV 06–350 DOC (JCx), 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class Counsel seeks $85,155.33 in costs – less than the $90,000 in costs it is permitted under the Settlement Agreement. (Award Mot. at 18-19.) Class Counsel provides an itemized breakdown of the expenses in this case, which include filing fees, expert witness fees, travel, and mediation costs. (Blumenthal Award Decl., Ex. 3; Hawkins Award Decl., Ex. C.) All of these expenses are typically recoverable in litigation. Cf. In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class action settlement). The Court therefore APPROVES the requested amount for costs.

### E. Class Representative Service Award

The trial court has discretion to award incentives to the class representatives. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz, 592 F. Supp. 2d at 1329. The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995). Here, Plaintiffs request incentive awards of $7,500 each, pursuant to the terms of the Settlement Agreement. (Award Mot. at 20.)

No Class Members objected to Plaintiffs' requested service awards of $7,500. Moreover, Plaintiffs fully participated in this case, including by responding to written discovery, producing documents, speaking with Class Counsel, and sitting in depositions. (Hildebrandt Decl. ¶¶ 7-9; Hawkins Award Decl., Ex. A ¶ 6.) Incentive awards of comparable amounts are "traditionally considered reasonable in similar jurisdictions." Elliott v. Rolling Frito-Lay Sales, LP, No. SACV 11-01730-DOC (ANx), 2014 WL 2761316 at *11 (C.D. Cal. June 12, 2014) (noting awards of $5,000 are traditionally considered reasonable); see also Custom LED, LLC v. eBay, Inc., No. 12-CV-00350-JST, 2014 WL 2916871, at *10 (N.D. Cal. June 24, 2014) (approving $7,500 incentive award from $3,230,000 total settlement amount). Accordingly, the Court finds the service award requested to be reasonable.

## IV. CONCLUSION

For the reasons stated above, the Court:

  (1) GRANTS final approval of the Settlement Agreement;
  (2) GRANTS the request for attorneys' fees and AWARDS Class Counsel attorneys' fees in the amount of $1,115,000;
  (3) GRANTS the request for costs and AWARDS Class Counsel costs in the amount of $85,155.33;

      (4) GRANTS the request for service awards and AWARDS a total of $7,500 each to Plaintiffs Gregory Hildebrandt and Mark Campbell; and

      (5) DISMISSES the Complaint WITH PREJUDICE.

The Court orders that such judgment be entered.

    **IT IS SO ORDERED.**